1821.

BRINKERHOFF
v.
MARVIN.

**BRINKERHOFF and others *against* MARVIN and others.**

A Court of law has an equitable jurisdiction over judgments by con-fession, entered upon warrant of attorney: and it may examine and decide as to the sufficiency of the *specifications* required by the sta-tute, (*sess.* 41. *ch.* 259. *sec.* 8.) to be filed with a judgment entered by confession on warrant of attorney. Where different judgment creditors, by confession, appeared before the Supreme Court, and discussed their respective rights as to the priority of *lien* of their re-spective judgments, without making any objection to the jurisdiction of the Court, or to its competency to examine and decide, as to the validity of the *specification,* accompanying the judgment of the plain-tiffs, this Court will consider the decision of the Supreme Court on the case as conclusive.

A judgment or other security may be taken and held for future ad-vances or responsibilities; but it *seems* that advances made or respon-sibilities incurred, *after* a subsequent judgment, will not be covered by such judgment.

Where a creditor has separate judgments against each of two partners, the partnership property will be bound to the same extent as if the amount of both judgments had been included in a joint judgment for the whole against both partners.

Where there are two judgment creditors, one of whom holds personal property as collateral security, the Court will not confine the latter to the personal security, or restrain him from prosecuting his remedy under the judgment, until such personal property is exhausted, or the rights concerning it are first settled, if he offers to substitute the other judgment creditor in his place, on being paid the amount of his debt.

*July* 10*th.*     THE bill, filed 28th of *March*, 1821, stated, that in *July* 1819, *J.* and *Z. Taylor*, of *Saratoga*, being largely indebted to the plaintiffs, for goods sold to them, executed a bond to the plaintiffs, for the amount due, with a warrant of at-torney to confess judgment thereon. That judgment was entered up in the Supreme Court, on the bond, the 27th of *November*, 1819. That on the 3d of *January*, 1820, the

defendants, *W. J.* and *A. Marvin*, entered up a judgment against *J. Taylor*, by confession, on filing special bail, without a writ or declaration, on a *cognovit actionem*, for 5,755 dollars and 60 cents, as collateral security for endorsements then made, or thereafter to be made, for *J.* and *Z. T.*, and for moneys then due, or thereafter to be due. That the defendants had, at that time, endorsed a note, given by *J.* and *Z. T.*, for goods previously purchased. That on the 7th of *April*, 1820, the defendants entered up another judgment against *Z. T.* for the like sum of 5,755 dollars and 60 cents, on filing special bail and a *cognovit actionem*, in like manner, which was given as security for the purposes above mentioned, for partnership debts of *J.* and *Z. T.* That the defendants issued executions on those judgments, in the counties of *New-York, Washington,* and *Saratoga*, in which personal property of *J.* and *Z. T.* was taken and sold. The bill charged that the defendants colluded with *J.* and *Z. T.* to defeat the just claims of the plaintiffs; that the purchase of goods was colourable, or for an inadequate amount, and that *J.* and *Z. T.* were never indebted to the defendants to the full sum directed to be levied on the executions so issued; and that the defendants held personal securities of *J.* and *Z. T.* to a large amount. That the plaintiffs filed *a specification* of their debt, on entering up their judgment; and have caused a *fi. fa.* to be issued. That the defendants have caused the real estate of *J.* and *Z. T.* to be advertised for sale, under their judgments and executions. That the defendants insist on the priority of the liens of their judgments, under an order of the Supreme Court, directing their judgments to be first satisfied, on the ground that the *specification* filed by the plaintiff was defective. The plaintiffs insisted that the *specification* filed by them was sufficient, and according to the statute; and that the judgments in favour of the defendants were entered up with intent to evade the statute requiring specifications of the debt to

1821.

BRINKERHOFF
v.
MARVIN.

1821.

BRINKERHOFF
v.
MARVIN.

be filed on entering up judgments by confession, and to cover contingent claims, for a greater amount than was due. The bill *prayed* for a discovery, and for an injunction, &c.

The defendants, in their *answer*, denied every allegation of fraud or collusion, and insisted on the legality and regularity of their proceedings, and on their right of priority of lien under the decision of the Supreme Court. That their judgments were not entered in fraud of the statute, or with intention to evade it; and they admitted the material facts stated in the bills. The defendants set forth the origin and amount of debt due to them from *J.* and *Z. T.* as partners, amounting, in *August,* 1820, to 7,074 dollars and 27 cents, which was intended to be covered by the judgments. They admitted, on the 28th of *August,* 1820, *J.* and *Z. T.* delivered to them, a bond and mortgage of *P. Pearsall,* for 1,137 dollars and 73 cents, as further collateral security. They insisted that the specification filed by the plaintiffs was defective, and not according to the provisions of the statute; that the decision of the Supreme Court giving a preference to the judgments of the defendants, was legal, valid, and just; and that the judgment of the plaintiffs was fraudulent, as it regarded the defendants. That the plaintiffs, on the 19th of *October,* 1820, applied to the Supreme Court, and obtained leave to file a supplementary specification to supply the defects of the former one. That the leave was granted, with a " *saving* to any *bona fide* judgment creditors of *J.* and *Z. T.,* or to any *bona fide* purchaser for a valuable consideration of any land, bound or affected by the judgment in that case, all their legal rights." That the plaintiffs proceeding to sell the real estate of *J.* and *Z. T.* under their judgment as having a priority of lien, the defendants, in *January,* 1821, applied to the Supreme Court, to have the priority of the lien of their judgment established. That the plaintiffs appeared to oppose the application, the merits of which were fully

discussed, without any objection being made, either to the
jurisdiction of the Court, or to the form of the application.
That the Supreme Court, on the 20th of *January*, 1821,
made the following *order :* " That the two judgments
of the defendants be preferred to the judgment of the
plaintiff, and that the executions on the judgments of
the defendants be first satisfied." The defendants
claimed the benefit of this order as legal and conclusive;
the Supreme Court having jurisdiction to make any order,
in a summary way, concerning any judgments by con-
fession, and executions thereon. That the defendants, on
the 27th of *January*, 1821, offered to assign their judgments
to the plaintiffs, and to put them completely in their places,
on being paid the principal, interest, and costs, due to
them, which offer was refused; but which they now re-
peated.

*Henry*, for the defendants, moved to dissolve the injunc-
tion. He cited 3 *Johns. Ch. Rep.* 276. 280. 1 *Caines' Rep.*
498.  9 *Johns. Rep.* 80.   16 *Johns. Rep.* 149. 165.   2
*Johns. Ch. Rep.* 304. 308, 309.  *Statute, sess.* 41. *ch.* 269.
*sec.* 8.   4 *Johns. Ch. Rep.* 245. 247.   He contended, that
the defendants had equal equity; and had, also, the legal
right and priority, and ought to be left in the enjoyment of it.
That the construction given to the statute, relative to speci-
fications, by the Supreme Court, was valid, just, and con-
clusive.

*T. I. Oakley*, contra, insisted, that the specification ac-
companying the original entry of the judgment by the plain-
tiffs was sufficient; and that the defendants were not *bona
fide* judgment creditors, but were endeavouring to enforce,
by their judgments, the payment of more than was due to
them. That a judgment could not be entered for future
contingent demands. That the defendants held personal
property pledged to them, which ought first to be appropria-
ted towards satisfying their claims. That the plaintiffs are

1821.

BRINKERHOFF
v.
MARVIN.

not concluded by the order of the Supreme Court; and that th is Court ought to exercise its jurisdiction over the case, in the same manner as if the Supreme Court had made no order. He cited 2 *Johns. Ch. Rep.* 204, 205. 423 549. 4 *Johns. Ch. Rep.* 497. 4 *Vesey,* 396. 1 *Johns. Ch. Rep.* 91. 6 *Johns. Rep.* 284. 10 *Johns. Rep.* 595. 14 *Johns. Rep.* 63. 16 *Johns. Rep.* 106. 17 *Johns. Rep.* 388, 389.

THE CHANCELLOR. 1. The decision of the Supreme Court, stated in the pleadings, in which they have declared and adjudged that the specification filed by the plaintiffs, on entering their judgment by confession, was defective, and that, therefore, the judgments of the defendants were entitled to priority, I do not feel myself at liberty to question and overrule. It is settled, as an established rule, that Courts of law have an equitable jurisdiction over judgments by confession, entered upon warrants of attorney. It was so declared by the Supreme Court, in *Frasier* v. *Frasier ;* (9 *Johns. Rep.* 80.) and it is necessary to justice, that Courts of law should possess, and liberally exercise that jurisdiction. With respect to the sufficiency of these specifications, required by the act of the 21st of *April,* 1818, (*sess.* 41. *ch.* 259. *sec.* 8.) it is very clear, that the Court of law in which the judgment is entered, must examine and pass upon their validity, whenever the question arises before them. It is necessarily incidental to their general jurisdiction over the proceedings, judgments, and process of their own Courts. If the point arises between two judgment creditors, each claiming a priority of lien, the Court awarding execution must decide, and direct the application of the money to be collected. In this case, the parties appear to have discussed their respective rights in the Supreme Court, and never raised a doubt as to the competency of the Court to examine and decide on the validity of the specification accompanying the judgment of the plaintiffs.

I do not understand that the counsel, upon the motion be-

*Courts of law have an equitable jurisdiction over judgments entered upon warrants of attorney.*

fore me, mean to deny the authority of the Supreme Court, as exercised in the case ; but they insist, that the decision is erroneous, and that this Court may review the question, and decide the same point between the same parties, without reference to the decision at law.

In a variety of cases, which constantly arise in the Supreme Court upon special motion, matters of fact may be discussed, and equitable rights may be affected, which are not concluded, but may be reconsidered in this Court, under the advantage of a more full and elaborate investigation and discovery. But when the Supreme Court have been called upon to give a judicial construction to a statute, in its application to a case regularly before them, and they have solemnly settled that construction, as was done in the case of *Lawless* v. *Hackett*, (16 *Johns. Rep.* 149.) upon this very subject of specification of the debt, and when another case (as between the present parties) comes before them upon the same point, and, after discussion, the same rule of interpretation is applied to it, I think it would be very disorderly, and contrary to the respect and comity which is justly due from one co-ordinate tribunal to another, to undertake to correct that decision, upon a bill brought purposely to have that decision reviewed. I cannot perceive the propriety of such a direct interference and control, and I am not willing to assume it. I am not called upon, in a new case, to give a construction to the statute, but I am required to *relieve* the plaintiffs from the order of the Supreme Court, and that, too, upon the avowed ground, that the Supreme Court had given an erroneous construction to the statute in this very case, and between these very parties. This bill seems to have been principally intended to be a bill of review of that decision, and in that view I shall not sustain it.

Nor do I, by any means, wish to be understood as intimating an opinion unfavourable to the accuracy of the construction given by the Supreme Court to the statute. The inclination of my mind is in favour of that construction.

**1821.**

BRINKERHOFF
v.
MARVIN.

Where the Supreme Court have decided on the construction of a statute in its application to a case regularly brought before them, this Court will not undertake to review the decision, but consider it conclusive on the case.

1821.

BRINKERHOFF
v.
MARVIN.

A bill stating generally, that the demand was for *sundries,* or a *sealed note for the balance,* or for *goods sold.* &c., according to the specification filed by the plaintiffs in this cause, when their judgment was entered ; or a bill for *goods, wares, and merchandizes sold and delivered, and for money lent and advanced, at various times,* as was the case in *Lawless* v. *Hackett,* is too general and loose to meet the mischief which the statute intended to prevent. The statute required not merely a statement of the nature and consideration of the debt or demand, but a *specification.* It was to be a *statement and specification,* and to specify, or to mark by "distinguishing particularities." To leave no doubt of the intention of the law ; it is to be a *particular* statement and specification. All this accumulation of words shows that something more was intended than the common counts in a declaration, for *goods sold,* and *work done,* and *money lent.* You must specify what goods, or work, and when and where, if you mean to be *particular,* and to give the opposite party *particular* and *specific* information. So very comprehensive a charge would be *vox et præterea nihil,* and leave the parties full opportunity to contrive and mask their frauds.

A judgment, as well as a mortgage, may be taken to secure future responsibilities.

But, it *seems* that responsibilities incurred *after* a subsequent judgment will not be covered by the judgment.

2. As to the character of the transactions with which the defendants are charged, it is to be observed that every allegation of fraud in the bill is met and denied in the answer, and the defendants have set forth, fully and clearly, the extent and amount of their demand. The two *Taylors,* as partners, are indebted to them to the amount claimed ; the two judgments appear to be valid and fair judgments, and each of them will come, as against each partner, and charge his share of the partnership property to the amount of the partnership debt. A judgment or other security may be taken and held for future responsibilities to the extent of it. In *Gordon* v. *Graham,* (cited in 7 *Viner,* 52. *E. pl.* 3. and in 1 *Powell on Mort.* 554.) it was held by Lord Ch. *Cowper,* that if a clause be contained in a mortgage making

it a security for future loans, subsequent loans will be taken as part of the original transaction, and paid before a second mortgage intervening with notice of the clause. So, it was held, in *Shirras* v. *Caig*, (7 *Cranch*, 34.) that a mortgage should stand to secure the real equitable claims of the mortgagee, whether they existed at the date of the mortgage, or arose afterwards, and before notice of the defendant's equity. Again; in *Livingston* v. *M'Inlay*, (16 *Johns. Rep.* 165.) the Supreme Court observed, that if it was part of the original agreement, a judgment may be entered as a security for future advances, beyond the amount then actually due, in like manner as a mortgage may be held as a security for future advances. The limitation to this doctrine, I should think would be, that when a subsequent judgment or mortgage intervened, further advances *after that period* could not be covered.

In the present case, the judgments were taken against each partner, in succession, for partnership debts then subsisting and due, or to grow due upon contingent responsibilities. The purpose of the judgments was expressly declared by concurrent receipts, and there is no colour of ground to question their validity. The advances were all made at the date of the second judgment. The defendants have a right to collect, under the first judgment against *John Taylor*, the whole of their demand against the partnership, to the extent of the judgment, out of his share of the joint property; and they have a right, in like manner, to collect under the second judgment against *Z. Taylor*, to the same extent, so that the partnership property is bound to the same extent as if the two judgments had been consolidated, and there was a joint judgment for the united sum against both the partners.

The only remaining objection to the motion is, that the defendants held personal property as collateral security, and ought first to resort to and exhaust that fund.

The answer is, that the bond and mortgage were de-

1821.

BRINKERHOFF
v.
MARVIN.

Where a creditor has separate judgments against each of two partners, the partnership property is bound to the same extent, as if there had been one judgment for the whole against both partners.

1821.

BRINKERHOFF
v.
MARVIN.

*A judgment creditor who holds, also, personal property as collateral security, will not be restrained at the instance of a subsequent judgment creditor, from prosecuting his remedy under his judgment, until he has pursued and exhausted the personal security, especially, when he offers to substitute the subsequent creditor in his place, on being paid the amount of this debt.*

livered, and not regularly assigned, and, as the *Taylors* allege, for a different and specific purpose; and the defendants, in their answer, offer to give the plaintiffs entire substitution, which would apply as well to that bond and mortgage as to the judgment. This is all that the plaintiffs can reasonably ask for; and it would not be equitable to detain the defendants from their remedy under the judgment, until they had engaged in, and concluded a litigation as to a personal security of such doubtful right and uncertain result.

The defendants have, therefore, shown themselves to be creditors of *J.* and *Z. T.* with equal equity to the plaintiffs; and they have a legal preference, by the decision of the Supreme Court, of which they ought not, and cannot, upon safe and sound principles, be devested by this Court.

I shall, accordingly, grant the motion to dissolve the injunction, unless the plaintiff shall, in twenty days, elect to pay to the defendants the debt and costs claimed by them, and shown by their answer to be due, and the costs of this suit; and in that case, the amount is to be ascertained, and the costs taxed by a master, and the judgments and the bond and mortgage to be assigned.

Order accordingly.