## Case No. 15,592.

### UNITED STATES v. LENOX.

[2 Paine, 180.] [1]

Circuit Court, S. D. New York.  Oct. Term, 1827.

ASSIGNMENT—FUTURE ADVANCES—RIGHTS OF THIRD PARTIES.

An assignment of property given to secure advances already made, and which may be made, is valid as to all advances except such as are made after the liens of third persons have intervened.

[This was a suit by the United States against Robert Lenox.]

R. Tillotson, for complainants.
T. L. Ogden, for defendant.

THOMPSON, Circuit Justice. The object of the bill filed in this case, is to call upon the defendant to pay over to the United States a part of the money received by him from the New York Insurance Company, for a loss paid upon a policy of insurance effected by James Woodham upon the brig Yamacran. The bill charges, that the defendant had received $9,670.75, and was entitled to retain only $6,000, and calls upon the defendant to account for the balance. The bill alleges, that the defendant held a bill of sale of the brig, and an assignment of the policy of insurance, as collateral security for the payment of the $6,000 and the interest, solely without reference to any future advances to be made by the defendant to Woodham; and that the United States afterwards recovered a judgment against Woodham for $2,443.80, to secure which he had assigned to the United States the said policy, after deducting the $6,000 and the interest. The bill alleges, that both before and after the assignment of the policy to the United States, the defendant was in the habit of discounting notes and advancing money to Woodham, but expressly charges that such loans and discounts were made upon the security of the paper discounted and the solvency of the parties liable thereon, without any reference or relation to the said brig or the insurance thereon as collateral security for the same; and calls upon the defendant to answer whether the bill of sale of the brig, and the assignment of the policy to him, were not made for the security of the $6,000 only.

The answer of the defendant admits that the bill of sale, although absolute on its face, was given and received as collateral security; but expressly avers, that the bill of sale and the assignment of the policies were made as security for advances made, and to be thereafter made, from time to time; and that they were always held and considered by him as a general security for all advances, and, as he believes, were so understood by Woodham; and denies that any notes were discounted upon the security of the parties thereon, without reference to the collateral security upon the brig, and the assignment of the policy of insurance; but avers, that all the discounts were with reference to and on the faith of such collateral security. The defendant admits the receipt of the money from the New York Insurance Company, as alleged in the bill, and sets out the advances made by him to Woodham, amounting to $9,667, leaving in his hands a balance of $3.75, which he offers to pay over to the United States.

The judgment in favor of the United States against Woodham was entered on the 22d of June, 1825, and the defendant admits notice thereof, and of the claim of the United States on the fund in July thereafter; but alleges, that the last renewal of any note for Woodham, or advance made to him, was in May preceding, and of course before any notice of the claim of the United States.

These allegations in the answer, being responsive to the bill, are not affected by any proofs in the cause. They are in no way contradicted, except by the testimony of Woodham. His understanding of the transaction would seem to be at variance with the statement contained in the answer; but his testimony is much weakened by that of McNeil, who swears that he heard Woodham tell the endorser upon the note last renewed that he had made a bill of sale to the defendant, which was an ample security against his responsibility. This was said to quiet the apprehensions of the endorser, and carries with it strong probability of being a true statement of the transaction. But admitting Woodham's testimony to be true in its fullest extent, it is but the evidence of one witness in direct contradiction to the answer, and is not sufficient to disprove it. The facts are, therefore, left as disclosed by the bill and answer.

The ground upon which the United States rest their claim upon this fund, is that the security given to the defendant by the bill of sale and the assignment of the policy, was for the specific sum of $6,000; and that the defendant had no claim upon the fund for any more. The answer of the defendant, however, expressly denies this allegation, and avers that they were given as security for advances to be made from time to time to Woodham. That this was a valid security, as between the defendant and Woodham, for any advances made by the former to the latter, cannot admit of a doubt. That point has been too often and too well settled, to be drawn in question. 5 Johns. Ch. 320; 6 Johns. Ch. 327, 417; 16 Johns. 165, 169, 417; 2 Johns. Ch. 309; 1 Johns. Ch. 394; [U. S. v. Hooe] 3 Cranch [7 U. S.] 73; [Shirras v. Caig] 7 Cranch [11 U. S.] 34; 15 Mass. 389; 8 Ves. 573. This rule may be subject to some qualifications as it respects the rights of third persons, but

1 [Reported by Elijah Paine, Jr., Esq.]

none which could affect the present case. All the limitation that could be required would be to protect the lien of third persons which should intervene between the taking of the security and the further advances. In the case now before the court all the ·advances made by the defendant were before the United States recovered a judgment against Woodham, or would have acquired any legal or equitable claim upon this fund.

The bill must, therefore, be dismissed.

NOTE. A judgment as well as a mortgage may be taken to secure future responsibilities; but it seems that responsibilities. incurred after a subsequent judgment to a third person, will not be covered by the prior judgment. Brinkerhoff v. Marvin, 5 Johns. Ch. 324. Where a creditor has separate judgments against each of two partners, the partnership property is bound to the same extent as if there had been one judgment for the whole against both partners. Id. The lien of a judgment is good for the interest which may accrue on it as well as for the principal debt. Sims v. Campbell, 1 McCord, Eq. 56; Winslow v. Ancrum, Id. 105. Judgments have no lien upon money. Huntingdon v. Spann, Id. 167. A judgment is no lien upon an equitable interest. Jackman v. Hallock, 1 Ham. (Ohio) 320; Manley v. Hunt, Id. 258. Where lands have been omitted out of a contract by mistake. which is afterwards corrected by a court of chancery, whether judgments obtained against the vendor, after the contract was made. but before its correction, have a lien upon it. quære. Pierce v. Brassfield. 9 Ala. 573. A judgment recovered against the devisee of real estate, which estate is charged by the testator with the payment of a joint and several note given by such devisee and the testator, upon which such judgment is obtained, is at law, junior and subordinate, as a lien upon the real estate of the devisee. to a prior judgment against such devisee for his individual indebtedness. Smith v. Wyckoff, 11 Paige, 49. A judicial lien when barred by lapse. of time, cannot be revived so as to have a retrospective effect prejudicial to the rights of others. Coombs v. Jordan, 3 Bland. 324; Post v. Mackall, Id. 517; Cape Sable Co's Case. Id. 660. Where a judgment has abated, by death, during the continuance of the lien, the plaintiff, or his representatives. may come in under a creditor's suit. and have the benefit of such lien without reviving at law. Coombs v. Jordan. Id. 326. Where the execution of a judgment has been suspended, the lien continues its limited time after such suspension. Id. The bringing of an action of debt upon a judgment, amounts to a virtual abandonment of any then existing lien arising therefrom. Cape Sable Co.'s Case, Id. 660. The general lien of a judgment creditor. upon the lands of his debtor. is subject to all equities which existed against such lands, in favor of third persons, at the time of the recovery of the judgment. And the court of chancery will so control the legal lien of the judgment creditor as to restrict it to the actual interest of the judgment debtor in the property; so as fully to protect the rights of those who have a prior equitable interest in such property, or in the proceeds thereof. Buchan v. Sumner, 2 Barb. Ch. 165. It is a settled principle in the court of chancery that the general lien of judgment, upon the real estate of a debtor. is subject to all the equities which existed against such real estate in favor of third persons, at the time of the recovery of such judgment. And a court of equity will so control the legal lien of the judgment creditor as to protect the rights of those who have prior equitable interests in, or liens on, such property, or the proceeds thereof. Wilkes v. Harper, Id. 338.