HARMAN ACKERMAN, Appellant, *v.* ELIAS HUNSICKER et al., Executors, etc., Respondents.

A mortgage given to secure future advances or indorsements is valid; it is a conveyance within the recording acts, and so, may be recorded.

A mortgage, duly recorded, given to secure future indorsements or advances, has a preference over subsequent judgments against the mortgagor, as well as to indorsements or advances made upon the faith thereof subsequent to the rendition of the judgments, without notice thereof as to those previously made; and this without regard to the question whether the indorsements or advances were optional or obligatory.

The docketing of a judgment is not, under the registry laws, constructive notice, to the mortgagee of its existence.

*It seems* that the record of such a mortgage is notice to subsequent purchasers and incumbrancers; they are put upon inquiry to ascertain to what extent advances or indorsements have been made, and by notice may prevent others to their prejudice.

*Brinkerhoff* v. *Marvin* (5 Johns. Ch. 320); *Lansing* v. *Woodworth* (1 Sandf. Ch. 43); *Barry* v. *M. E. Co.* (id. 280); *Goodhue* v. *Berrien* (2 id. 630), limited.

*Craig* v. *Tappin* (2 Sandf. Ch. 78), distinguished.

*Ackerman* v. *Hunsicker* (21 Hun, 53), reversed.

(Argued January 25, 1881; decided April 19, 1881.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, made April 6, 1880, reversing a judgment in favor of plaintiff, entered upon the report of a referee and granting a new trial. (Reported below, 21 Hun, 53.)

This action was brought to foreclose a mortgage executed by the defendant Levi, upon lands situate in the city of Syracuse. Certain of the defendants, who were judgment creditors of the mortgagor, answered, claiming that their judgments were liens superior to the mortgage, as to a portion of the amount claimed by plaintiff to be secured thereby. The facts appear sufficiently in the opinion.

*Cornelius E. Stephens* for appellants. The recording act makes a mortgage, when recorded, constructive notice to subsequent grantees and incumbrancers of its terms and conditions. (3 R. S. [5th ed.] 45, § 1.) A mortgage made *bona fide* for the purpose of securing future debts expected to be contracted in the course of dealing between parties, is a good and valid security. (1 Hilliard on Mortgages, 317; Jones on Mortgages, §§ 364, 365, 368, 372; *Shirras* v. *Caig,* 7 Cranch, 34; *U. S.* v. *Hooe,* 3 id. 73; *Leeds* v. *Cameron,* 3 Sumn. 488; *Commercial Bk.* v. *Cunningham,* 24 Pick. 270; *Goddard* v. *Sawyer,* 9 Allen [Mass.], 78; *Truscott* v. *King,* 6 N. Y. 147; *James* v. *Morey,* 3 Cow. 292; *Brinkerhoff* v. *Lansing,* 4 Johns. Ch. 73; *Fassett* v. *Smith,* 23 N. Y. 252, 258; *Brackett* v. *Sears,* 15 Mich. 244; *Seaman* v. *Fleming,* 7 Rich. [S. C.] Eq. 283; *Garber* v. *Henry,* 6 Watts [Penn.], 57; *Crane* v. *Dunning,* 7 Conn. 387; *McDaniels* v. *Colvin,* 16 Vt. 300; *Ward* v. *Cooke,* 17 N. J. Eq. 93; *Bk. of Utica* v. *Finch,* 3 Barb. Ch. 293; *Robinson* v. *Williams,* 22 N. Y. 380; *Stuyvesant* v. *Hall,* 2 Barb. Ch. 151, 158; *Talmadge* v. *Wilgers,* 4 Edw. Ch. 239, note; *Howard Ins. Co.* v. *Halsey,* 8 N. Y. 271; *Wheelwright* v. *Depeyster,* 4 Edw. Ch. 232; *King* v. *McVicker,* 3 Sandf. Ch. 192.) A judgment subsequent to a mortgage stands on no better footing than a junior mortgage. (*Thomas* v. *Kelsey,* 30 Barb. 268; *Youngs* v. *Wilson,* 27 N. Y. 351; *Truscott* v.

*King*, 6 id. 161, 162; *Lansing* v. *Woodworth*, 1 Sandf. Ch.
43, 46; *Goodhue* v. *Berrien*, 2 id. 680.)   A prior mortgage is
affected only by actual notice of a subsequent mortgage, and
not by constructive notice from the recording of the second
mortgage.   (Jones on Mortgages, § 372; *McDaniels* v. *Colvin*,
16 Vt. 300; *Truscott* v. *King*, 6 Barb. 346; *S. C.*, 6 N. Y.
166; *Robinson* v. *Williams*, 22 id. 387; *Nelson* v. *Boyce*,
7 J. J. Marsh. [Ky.] 401; 11 Am. L. Reg. [N. S.] 273; *Ladue*
v. *Detroit, etc., Railway Co.*, 13 Mich. 380.)   If a mortgage
contains enough to show a contract between the parties, that it
is to stand as a security to the mortgagee for such indebtedness
as may arise from the future dealings between the parties, it is
sufficient to put a purchaser or incumbrancer on inquiry, and
if he fails to make it he is not entitled to protection as a *bona
fide* purchaser.   (Jones on Mortgages, § 373; *Witzinski* v.
*Everman*, 51 Miss. 841, 845.)   Such mortgage is good for ad-
vances made after a subsequent mortgage or sale, if made in
good faith, without notice.   (*Gordon* v. *Graham*, 2 Eq. Cas.
Ab. 578; *Burdett* v. *Clay*, 8 B. Monr. 287; *Nelson* v. *Russell*,
13 Ind. 494, 535; *King* v. *Mc Vicker*, 3 Barb. Ch. 208;
*Frye* v. *Bank*, 11 Ill. 381.)   It is not even necessary that
the mortgage should express on its face that it is given to
secure future advances.   (*Collins* v. *Carlisle*, 13 Ill. 254;
*Darst* v. *Gale*, 83 id. 136; *Bank of Utica* v. *Finch*, 3 Barb.
Ch. 293; *Murray* v. *Barney*, 2 Sandf. Ch. 78; *Wescott* v.
*Gunn*, 4 Duer, 107; *Walker* v. *Snediker*, Hoffman's Ch.
145; *Townsend* v. *Empire Stone Dressing Co.*, 6 Duer, 208;
*Foster* v. *Reynolds*, 38 Mo. 553; *Griffin* v. *N. J. Oil Co.*, 11
N. J. Eq. 49; *James* v. *Brown*, 11 Mich. 30.)   Plaintiff had
the right to apply a portion of the payments made by Levi
upon his unsecured claims.   (*Thomas* v. *Kelsey*, 30 Barb. 274.)

*George Barrow* for respondents.   As to all indorsements
made by the plaintiff after the docketing of the judgments
respectively, he was a subsequent incumbrancer and charge-
able with notice.   (*Brinkerhoff* v. *Marvin*, 5 Johns. Ch.
320, 327; *James* v. *Johnson*, 6 id. 417, 429; *Lansing* v.

*Woodworth,* 1 Sandf. Ch. 43; *Barry* v̇. *Merchants' Exch., etc.,* id. 280; *Craig* v. *Tappan,* 2 Sandf. Ch. 85; *Goodhue* v. *Berrien,* id. 630; *Robinson* v. *Williams,* 22 N. Y. 380; *Hall* v. *Crouse,* 13 Hun, 557; 4 Kent's Com. 175, and note 3 [11th ed.]; *Spador* v. *Lawlor,* 17 Ohio, 371; *Ter Hoven* v. *Kern,* 2 Barr [Penn. St.], 96; *Ladue* v. *Detroit & M. R. R. Co.,* 13 Mich. 380.; *Parmenter* v. *Gillespie,* 9 Penn. St. 86; *McLure* v. *Roman,* 52 id. 458; *Parker* v. *Jacoby,* 3 Trant. 300; *Boswell* v. *Goodwin,* 31' Conn. 74; *Hartley* v. *Ketlin,* 45 Penn. St. 49; *Hubbard* v. *Savage,* 8 Conn. 215, etc. ; id. 37; 7 id. 387; *Kramer* v. *Farmers' Bk. of Ohio,* 15 Ohio, 253; *Bank of Montgomery's Appeal,* 36 Penn. St. 170; *Collins* v. *Carlisle,* 13 Ill. 254; 3 Am. L. Reg. 92, etc. ; Thomas on Mortgages, 61, 62; *Ketcham* v. *Wood,* 10 Weekly Dig. 453; *Craig* v. *Tappan,* 2 Sandf. Ch. 85.) A mortgage does not pass any estate in the land. It is simply a security for a debt, and no more than a judgment. (11 Johns. 534; 16 id. 254; 19 id. 325; 5 Wend. 603; 2 Paige, 68; 3 Barb. 305; 27 id. 503; 3 Den. 232.)

ANDREWS, J. The mortgage from Levi, to the plaintiff, was given to secure the mortgagee, for any indorsements he had made, or should thereafter make, for the mortgagor, or the firm of Levi & Miller, to the amount of $6,000. It was dated May 2, 1874, and was recorded May 3, 1874. The first indorsement was made May 7, 1874, and the last October 16, 1874. The plaintiff has been compelled to pay the indorsed paper, and has advanced for that purpose the sum of nearly $5,000, over and above all payments made by the mortgagor. This action is brought to foreclose the mortgage, and the only controversy relates to the priority of lien as between the mortgagee and judgment creditors of the mortgagor, whose judgments were obtained subsequent to the mortgage, but prior to the indorsement by the plaintiff, of some of the notes, which enter into and form a part of the mortgage debt.

The question is whether the mortgage is a paramount lien to the judgments, as to that part of the mortgage debt, arising

out of indorsements made after the judgments were docketed. It is not claimed that the plaintiff had actual notice of the judgments when he indorsed the paper, and it is found by the referee that he never had personal notice or knowledge, or any notice of their existence, until after all the indorsements had been made. The judgments were docketed in the county where the mortgaged premises were situated. If the docketing of the judgments was constructive notice to the plaintiff of their existence, then he had notice of the judgments; otherwise he had none.

There is no question as to the validity of mortgages to secure future advances or liabilities. They have become a recognized form of security. Their frequent use has grown out of the necessities of trade, and their convenience in the transactions of business. They enable parties to provide for continuous dealings, the nature or extent of which may not be known or anticipated at the time, and they avoid the expense and inconvenience of executing a new security, on each new transaction. It is well known that such mortgages are constantly taken by banks, and bankers, as security for final balances, and banking facilities are extended, and daily credits given, in reliance upon them. Mortgages for future advances have sometimes been regarded with jealousy, but their validity is now fully recognized and established. (*Bank of Utica* v. *Finch*, 3 Barb. Ch. 294; *Truscott* v. *King*, 6 N. Y. 147; *Robinson* v. *Williams*, 22 id. 380; *Shirras* v. *Caig*, 7 Cranch, 34; *Lawrence* v. *Tucker*, 23 How. [U. S.] 14; *Leeds* v. *Cameron*, 3 Sumn. 492.)

There can be no doubt, therefore, that the mortgage in this case, as between the parties to it, is a valid security for the plaintiff's debt. It is equally clear that to prefer an intervening incumbrance over the claim of the plaintiff, would violate the understanding of the parties to the mortgage, at the time it was executed, for the plain intention was, that the interest of the mortgagor in the land, as it existed when the mortgage was given, should be bound as security for all liabilities which the plaintiff might incur as indorser, upon the faith of the mort-

gage. It could not have been intended that the plaintiff should be deprived of any part of the security of the mortgage, for any part of the indorsed paper. It would have been a clear breach of good faith on the part of the mortgagor, if he had, without notice to the mortgagee, voluntarily incumbered the land by liens having priority of the mortgage, and then applied to the plaintiff for, and procured further indorsements.

If the judgments have a preference over the plaintiff's mortgage, as to indorsements made after the judgments were docketed, it must result from some superior equity of the judgment creditors, or from the effect of docketing the judgments, as constructive notice to the plaintiffs of their existence. The authorities are clear to the point, that upon general principles of equity, no such preference can be claimed. In *Gordon* v. *Graham* (2 Eq. Cas. Abr. 598) Lord Chancellor COWPER is reported to have held that a first mortgagee, in a mortgage covering future advances, has priority not only for what may be due to him at the time of a second mortgage, but also for advances made by him after notice of the second mortgage. This case was doubted in England, as to the point reported to have been decided, that the first mortgagee was entitled to a preference for advances made after notice of the second mortgage, and in *Hopkinson* v. *Rolt* (9 H. L. Cas. 514) this doctrine was overruled; but the court distinctly recognized and affirmed the doctrine, that the first mortgagee was protected as to advances made after the second mortgage without notice. The case of *Shirras* v. *Caig* (7 Cranch, 34), is a leading case in this country upon this point. The mortgage in that case was executed to secure existing debts and future advances. The mortgagors subsequently conveyed the equity of redemption to the defendants, who were *bona fide* purchasers without notice of the plaintiffs' mortgage, and one of the questions was, whether the mortgagees, who had made advances to the mortgagors on the faith of the mortgage, after they had conveyed to the defendants, but without notice of their title, could enforce the mortgage for such advances, and it was held that they could, MARSHALL, Ch. J., saying, that the mortgage

stood as security for "the payment of debts still remaining due to them, which were either due at the date of the mortgage or were afterward contracted upon its faith, either by advances actually made, or incurred, prior to the receipt of actual notice of the subsequent title of the defendants." The effect of the registry laws was not involved, and the case was decided upon the general equities. The advances in *Shirras* v. *Caig* were optional; that is, the mortgagees were not bound to make them; and the same is true of the advances in *Gordon* v. *Graham*. *Shirras* v. *Caig* has been frequently cited with approval by the courts in this State, and its authority, so far as I know, has not been questioned. (*Brinkerhoff* v. *Marvin*, 5 Johns. Ch. 320; *Griffin* v. *Burtnett*, 4 Edw. Ch. 673; *Truscott* v. *King, supra ; Robinson* v. *Williams*, 22 N. Y. 380.) It must, I think, be conceded that, according to general principles of equity, the lien of the plaintiff's mortgage is superior to the lien of the judgments, as well for indorsements made prior to their rendition, as for those subsequently made without notice.

It remains to consider whether, under the statutory system for the registry of liens, the docketing of the judgments was constructive notice to the plaintiff. If the docketing of the judgments was constructive notice to him, of their existence, then, unquestionably, the judgments have preference to the plaintiff's mortgage as to all advances subsequently made.

The general principle of construction of the registry laws upon the point of notice, is that the registration of incumbrances is notice to subsequent incumbrancers only. They are prospective, and not retrospective, in their operation. (*Stuyvesant* v. *Hall*, 2 Barb. Ch. 151 ; *King* v. *Mc Vickar*, 3 Sandf. Ch. 192; *Howard Ins. Co.* v. *Halsey*, 8 N. Y. 271.) The plaintiff's mortgage was first made, and first recorded, and regarding these facts only, the mortgage was the prior lien. It is claimed, however, that the mortgage did not become an actual lien or incumbrance until the indorsements were made, and that as to each indorsement it became in effect a new mortgage, as of the time when such indorsement was made,

and that as to indorsements made subsequent to the docketing of the judgments, the mortgage must be deemed a subsequent lien. It is manifestly true that the mortgage did not become an actual charge on the land, so as to be enforceable by the plaintiff, until he had incurred liability as indorser. But the plaintiff's mortgage was an instrument capable of being recorded under the statute, before any liability had been incurred. It is the general practice to record mortgages, and docket judgments, taken to secure future advances and contemplated liabilities, before an actual indebtedness arises. On being recorded, the record is notice to subsequent purchasers and incumbrancers, and they are put upon inquiry and have the means of ascertaining to what extent advances have been made, and by notice, to prevent further advances to their prejudice. In *Truscott* v. *King* (6 N. Y. 147), judgment had been entered on a bond and warrant of attorney for $20,000, to secure existing and future liabilities, and JEWETT, J., said, there could be no doubt that the judgment in its inception was a valid security upon the land to the full amount, whether a debt only in whole or part then existed, if it was agreed at the time that it should be given as an indemnity for advances thereafter to be made, or such advances were thereafter made. In *Robinson* v. *Williams* (22 N. Y. 386), a mortgage had been executed to secure future liabilities of the mortgagor to the Hollister Bank, on paper which might be discounted by the bank for the mortgagor. The mortgage was recorded on the day it was executed, and before any liabilities had been incurred. DAVIES, J., in giving the opinion of the court, said : "The recording of the mortgage was notice that the Hollister Bank had a mortgage on the premises for the purposes therein specified." It does not, I think, aid the argument for the judgment creditors, that the plaintiff had no claim on the land for the indorsements in question, until after the docketing of the judgments, or that by our law a mortgage is a mere lien or security, and not a title. The mortgage when executed was a conveyance within the recording act, and the plaintiff was entitled to put it upon record. It was a potential

lien for its full amount, of which subsequent purchasers or incumbrancers had notice. They were informed by the record of the existence of a bond containing the condition upon which the mortgage was given, and through that of the agreement between the parties, that the interest of the mortgagor in the land, as it existed at the date of the mortgage, was pledged for any indorsements which the plaintiff might make, up to the limit fixed ; for this, as we have said, was the plain reading of the transaction. / It would be inequitable to permit third persons to deal with the mortgagee in respect to the land, to the prejudice of the plaintiff's security, without notice to him, or to allow a subsequent purchaser or incumbrancer, having notice by the record, to acquire a preference over the mortgage, for indorsements made upon the faith of the mortgage, after the second incumbrance, in ignorance of the intervening lien or title.

The question presented in this case has not been decided in this State by the court of last resort. In *Brinkerhoff* v. *Marvin* (5 Johns. Ch. 320), the chancellor, after referring to the observation of the court in *Livingston* v. *McInlay* (16 Johns. 165), that if it was a part of the original agreement, a judgment might be entered as a security for future advances beyond the amount then actually due, in like manner as a mortgage may be held as a security for future advances, said : " The limitation to this doctrine I should think would be, that when a subsequent judgment or mortgage intervened, further advances after that period could not be covered." The remark of the chancellor has been repeated in subsequent cases. (*Lansing, Rec'r,* v. *Woodworth,* 1 Sandf. Ch. 43 ; *Barry* v. *Mer. Ex. Co.,* id. 280 ; *Goodhue* v. *Berrien,* 2 id. 630.) What was said by the chancellor in *Brinkerhoff* v. *Marvin* was unnecessary to the decision of the case, but with the qualification that the first incumbrancer had notice of the intervening right when the subsequent advances were made, the observation is not open to controversy. Neither in that, nor any of the subsequent cases referred to, was it material to decide, whether the record of the subsequent incumbrance, was notice to the party

holding the prior lien, and in none of them was this question considered. In *Craig* v. *Tappin* (2 Sandf. Ch. 78), it does not appear whether the first mortgagee had notice of the second mortgage when the subsequent advances were made. He knew that the second mortgage was to be given, and the inference that he knew of its existence when the advances were made, is not an unreasonable one. In *Truscott* v. *King* (6 Barb. 346) the Supreme Court expressly decided the point involved in this case in accordance with the view I have expressed. The judgment of the General Term was reversed in this court on another point, but one of the judges who wrote an opinion for reversal, expressed his concurrence in the views expressed by Judge PARKER in the court below, upon the point now in controversy. (See opinion of EDWARDS, J., 6 N. Y. 166.) The adjudications in the courts of other States upon the question are conflicting. It would not be profitable to refer to them at length. They will be found cited in Jones on Mortgages, § 364 *et seq.*

The doctrine that a party who takes a mortgage to secure further optional advances, upon recording his mortgage is protected against intervening liens, for advances made upon the faith and within the limits of the security, until he has notice of such intervening lien, and that the recording of the subsequent lien is not constructive notice to him, has, we think, been generally accepted as the law of the State, at least since the decision in *Truscott* v. *King*. It would not be wise, under the circumstances, now to adopt the opposite view, even though we should regard it as better supported by reason. It seems to us, however, that the doctrine which we have affirmed in this case is most consistent with equity, and establishes a rule which is reasonable, and easy of application. The opposite rule imposes the burden of notice and vigilance upon the wrong person. The party taking the subsequent security may protect himself by notice, and as is said by Mr. Jarman in his notes to Bytherwood's Conveyancing : "No person ought to accept a security subject to a mortgage authorizing future advances, without treating it as an actual advancement to that extent."

These views lead to a reversal of the order of the General Term and an affirmance of the judgment entered upon the report of the referee.

All concur.

Order reversed and judgment affirmed.