ARABELLA D. HUNTINGTON and CHARLES H. TWEED, as Executors, etc., of COLLIS P. HUNTINGTON, Deceased, Respondents, *v.* SYLVESTER H. KNEELAND and Others, Appellants, Impleaded with Others.

*Right of a solvent man, as against subsequent creditors, to dispose of his property — notes given subsequently, for advances made before judgments were recovered — what is secured by an agreement to secure future advances — conflict of evidence in an equitable action.*

A solvent man is at liberty, at least as against creditors whose claims subsequently accrue, to give away all of his property, real or personal, to those of his blood or to strangers.

Where a person, while solvent, executes a deed which, absolute in form, is in fact a mortgage given to secure subsequent advances, the rights of judgment creditors of the mortgagor whose claims accrue subsequent to the execution of the deed and of the making of the advances, and who do not extend credit to the mortgagor on the faith of his interest in the real property in question, are subordinate to the rights of the mortgagee, in the absence of evidence that the deed was executed with fraudulent intent, or that the premises conveyed so far exceeded in value the amount of the indebtedness as to compel the inference that it was fraudulent in its inception.

The fact that, although the advances were made prior to the entry of the judgments, notes were given to the mortgagee, for the amount of such advances and the accumulated interest, subsequent to the entry of the judgments or to the time when the judgments might have been entered, does not affect injuriously the mortgagee's rights.

*Quære,* as to the respective rights of the mortgagee and judgment creditors if the advances were made after the judgments were entered.

An agreement to secure future advances must be confined to such as are within the contemplation of the parties at the time when the agreement is made.

*Semble,* that in an equitable action, where the court is to determine the facts, the oath of one man does not necessarily overcome or balance that of another and thus prevent the court from determining the fact in question in accordance with the testimony of one or the other of such witnesses.

APPEAL by the defendants, Sylvester H. Kneeland and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Westchester on the 8th day of April, 1904, upon the decision of the court, rendered after a trial at the Westchester Special Term, directing a foreclosure sale.

*John Ford*, for the appellant Kneeland.

*William E. Kisselburgh, Jr.*, and *F. Spiegelberg* [*Franklin Bartlett* with them on the brief], for the appellants Bache and Weigley.

*Henry L. Maxson*, for the appellant Sawyer.

*John E. Parsons*, for the respondents.

WOODWARD, J.:

Arabella D. Huntington, as executrix under the will of the late Collis P. Huntington, and another, bring this action to foreclose a mortgage upon certain real estate located in Westchester county, and the defendants, other than Sylvester H. Kneeland and Isaac E. Gates, a coexecutor under the will, claim rights under various judgments obtained in actions against the defendant Kneeland.

Briefly stated, the facts which find support in the evidence are, that the defendant Kneeland was an intimate personal friend of the late Collis P. Huntington, and had been engaged with him in various business transactions prior to 1881. In that year Mr. Kneeland made and delivered, or caused to be made and delivered, certain deeds of the real estate involved in this action to Isaac E. Gates, who is conceded to have been the agent or trustee of Mr. Huntington, and these deeds were duly entered of record in the county clerk's office. Although these deeds were absolute in form, it is conceded (and this concession is necessary to the rights of any or all of the parties to this action) that they were intended to operate as mortgages. The defendants' theory is that these mortgages were intended as security for a certain obligation of $75,000, which was subsequently paid, while that of the plaintiffs is that the mortgages were to stand as security for loans and advances. While there is a distinct conflict of evidence upon this point, we are persuaded that the learned court at Special Term was justified in reaching the conclusion that the latter proposition was established, for it is the theory most in accord with the conduct of the parties to the transaction in after years. Kneeland at this time, it may be assumed, was solvent, for no other condition is suggested, and he was, therefore, at liberty to give away all of his property, real and personal, to those of his blood or to strangers. (*Schenck* v. *Barnes,*

156 N. Y. 316, 320.) Prior to the 2d day of June, 1891, advances were made aggregating, with interest, $293,100.26, which sum was embodied in a promissory note made and delivered by the defendant Kneeland to Mr. Huntington. If these advances were not made under the parol agreement in reference to the two deeds made and delivered to the defendant Gates in 1881, then we must assume that this large sum of money was handed over to Mr. Kneeland without any other security than that of any ordinary creditor, a situation of affairs not likely to exist among prudent business men during a period of ten years, in which time no interest appears to have been paid. The note above mentioned, which bears date June 2, 1891, recited that Mr. Kneeland had "deposited with the payee of this note as collateral security for payment of this or any other liability or liabilities of mine to said payee, due or to become due, or which may be hereafter contracted, the following property, viz.: About 400 acres of land at Yonkers, N. Y., covered by following deeds, viz.: Matthew H. Ellis, referee, to Isaac E. Gates, dated May 28, 1883; Sylvester H. Kneeland to Isaac E. Gates, dated February 21, 1885." The dates of these deeds are, in a measure, confusing, but it is explained in the evidence that they relate to the same lands conveyed to the defendant Gates in 1881, the later deeds being necessary to perfect the titles. At the time of making and delivering the note of June 2, 1891, none of the defendants had any claim against Mr. Kneeland, so far as the record shows; he had, so far as they are concerned, an undoubted right to give his property away, or to dispose of it in any manner that he saw fit, and having, in 1881, given deeds of the premises to Mr. Gates to secure the payment of a loan of $75,000 — which is the contention of the defendants — there is no good reason why, having perfected the title to the premises, he might not permit the deeds to stand as collateral to the note given in payment of the indebtedness which had accumulated during the intervening ten years, even assuming that the original obligation of $75,000 had been paid in the meantime. If Mr. Kneeland, in 1891, had given the premises absolutely to Mr. Gates in payment of his indebtedness to Mr. Huntington, it clearly would have constituted no fraud as against the judgment creditors in this action, whose rights accrued subsequent to that time; and as it nowhere appears that the security was largely

in excess of the amount then due, it is difficult to understand how the judgment creditor defendants in this action, who seek to establish a counterclaim, can have been prejudiced in any of their rights by the transaction. They do not pretend that they extended credit to Mr. Kneeland on the strength of his ownership of the premises in dispute, for they did not know that he had any possible interest in the property, and they are not worse off to-day because of the fact that he appears as a mortgagor, than they would have been if he had in fact paid his indebtedness with the premises in 1891. Of course, if the facts showed that the indebtedness to Mr. Huntington was fictitious; that the transaction away back in 1881, and again in 1891, was a mere manipulation of the assets of Mr. Kneeland for the purpose of defrauding subsequent creditors by placing his property in a secret trust for his own benefit, as was the case in theory of law in *Schenck* v. *Barnes* (*supra*), a court of equity would find some way of undoing the wrong, but fraud is never to be presumed — it must be proved — and in the absence of evidence showing that the defendant Kneeland had given a deed of this property with fraudulent intent; that the premises so far exceeded in value the amount of the indebtedness as to compel the inference that it was fraudulent in its inception, we can see no higher equities in the defendants than those of the plaintiffs in possession of the premises, and the latter ought not to be deprived of the advantage of their security upon the faith of which the advances were made.

On the 28th day of May, 1897, Kneeland having in the meantime failed to pay any part of the indebtedness or the interest thereon, a new note, payable on demand, was made and delivered for the sum of $393,921.95. This note was accompanied by a letter of the same date, in which Mr. Kneeland says: " Referring to my demand note in your favor for $393,921.95 bearing even date herewith, given in renewal of, and to represent the indebtedness heretofore represented by, my demand note in your favor, dated June 2, 1891, for $293,100.26, I have to say that it is understood between us that the four deeds to Isaac E. Gates for various parcels of real estate in New York County and Westchester County, viz., two deeds from me to Isaac E. Gates, dated in July, 1881; deed from Matthew H. Ellis, referee, to Isaac E. Gates, dated May 28, 1883, deed from me to Isaac E. Gates, dated February 21st, 1885, and the proper-

ties referred to therein, which heretofore stood as security for the indebtedness represented by said note, dated June 2, 1891, are to hereafter stand as security for the indebtedness now represented by the note bearing even date herewith above referred to, as well as for your liability upon the bond or undertaking as security for payment of the judgment heretofore recovered by Mr. Weigley against me." Mr. Kneeland had a perfect right to give the security in 1891, as we have already seen. Mr. Huntington, as the real owner of the security, might have foreclosed his lien in 1897, and there is no doubt that he would have been entitled to collect the principal and interest. So far as the record shows, the value of the property here in dispute was no more than sufficient to discharge the indebtedness, if, indeed, it was adequate for that purpose. The note given in 1891, in addition to the real estate, showed certain other securities, consisting of notes, stocks, etc., indicating that the real estate was not considered a sufficient security, rather than that the personal property was the basis of the loan, as contended by the defendants. If, therefore, Mr. Huntington, instead of foreclosing his lien and receiving the interest which had been accumulating for a period of ten years, consented to allow the matter to stand, taking a new note for the amount then due, retaining the security to which he had all along been entitled, we fail to see anything which prejudiced the rights of judgment creditors, nor can we discover the essential elements of fraud in the transaction. The entire basis of this transaction dated back before any of the defendants had claims against the defendant Kneeland, so far as we are able to discover, and it would be strange if a continuing security might not be extended to accumulated interest under the circumstances of this case.

It appears from the complaint and the evidence that subsequent to the making and delivery of the note of June 2, 1891, advances were made, ending in 1893, which, with interest, aggregated $200,502.23 in June, 1897, and a note covering these advances was made and delivered at that time. The learned court below finds as a matter of fact that "the loans and advances making the indebtedness represented by the said notes of May 28, 1897, for $393,921.95, and June 26, 1897, for $200,502.23, made by the defendant Kneeland to the said Collis P. Huntington were all made prior to the

entry of all the judgments proved upon the trial or pleaded in the answers of the defendants, except that loans and advances included in the said note of June 26, 1897, to the amount of $6,077, were made subsequent to the entry of the judgment of Franklin J. Sawyer for $27,367.02, entered November 14, 1891." This finding is supported by the evidence and the pleadings in the case.

Wherein is the element of fraud calculated to vitiate the plaintiffs' liens upon the premises involved in this action? None of the defendants claim to have extended credit or to have acted upon the faith that Mr. Kneeland was the owner of any of this property. There is not the slightest evidence of any collusion or bad faith in the transactions between Mr. Huntington or his agent, and Mr. Kneeland; their dealings appear to have been those of men in friendly relations, Mr. Huntington advancing money and Mr. Kneeland giving such security as he had, and while it does not affirmatively appear in this case, the inference is almost irresistible, from the fact that the defendants do not show the contrary, that the security is entirely inadequate to pay the indebtedness. The entire history of the relations between Mr. Huntington and Mr. Kneeland is in harmony with the theory of the plaintiffs; is inconsistent with that of the defendants, and it would be a strange misapplication of the rules of a court of equity if advances made upon the strength of a pledged security could be made secondary to judgments based upon claims which had their origin in transactions entirely independent of any knowledge of the existence of the property involved in this action. We have carefully read and considered the argument and authorities cited, but we fail to find any reason for disturbing the judgment in this case.

The defendants Bache and Weigley urge the principal points in this case. *First*, they insist that the testimony does not establish the verbal agreement of 1881 that the deeds then given to Gates should stand as security for future advances, and this contention is based upon the fact that while Mr. Gates testifies to this agreement, Mr. Kneeland unequivocally denies the same. Thus, urge these defendants, " the evidence on behalf of the plaintiffs' contention is equal to that against it and oath is met by oath. In such a case the burden of proof is not sustained," citing authorities, among them

SECOND DEPARTMENT, MARCH, 1905.　　[Vol. 102.

*Griffiths* v. *Hardenbergh* (41 N. Y. 464, 471), but we are of opinion that counsel have misapprehended the real points under consideration. In the case cited the court had directed a verdict, thus assuming that there was no question of fact to be determined, and the court in commenting upon this situation say : "In the most favorable view the evidence could only be said to be conflicting. Taken literally, the testimony of the plaintiff did not show a promise by defendant outside the bond, and the defendant's testimony was that he did not intend a promise, but was merely giving advice as counsel. At most, it was oath against oath, and as the affirmative was on the plaintiff, he failed to establish a promise. The direction was, therefore, wrong as to the amount of damages." This is a long way from holding that in an equitable action, where the court is to determine the facts, the oath of one man must necessarily overcome or balance that of another, and no case with which we are familiar has ever so held. But even were this true it would not alter the case, for the defendants had no rights as against the plaintiffs or their testator in 1891. He had a perfect right to make these deeds in 1891 as security for the debt he then owed and as a continuing security. If he might have made and delivered the deeds, he had a right to ratify and confirm the delivery which had been previously made, even though the original indebtedness had been discharged, and the fact that he did this in a written memoranda goes to show that this was in harmony with their understanding of the relation between the parties.

Under their second point it is urged that if the deeds were given to secure future advances they were given for advances to be made to protect Kneeland in the enterprise in which he was then engaged and were not intended to secure the advances made thereafter for other purposes. It is undoubtedly true, within proper limits, that "an agreement to secure future advances must be confined to such as are in the contemplation of the parties at the time when the agreement is made, for nothing not within the intention is included in any contract ; and the intention must be derived from the words and surrounding circumstances," as suggested by the learned counsel for the appellants Bache and Weigley in their brief, but here the language used is general in its nature, with no suggestion that it is limited to any particular transaction, and from 1881 to 1891 a

prudent business man, such as Mr. Huntington would generally be conceded to be, was advancing sums of money aggregating over one-quarter of a million of dollars, and if the understanding between the parties was not what the plaintiffs claim, then Mr. Huntington must have departed materially from the practice of a prudent business man. From what may be gathered inferentially, if the security was intended only to relate to the original $75,000 transaction, and matters growing out of it, the security was all out of proportion to what might have been anticipated in the way of advances, and as the deeds related to separate parcels of real estate, there would appear to be no good reason for blanketing the entire real estate of Mr. Kneeland. If, on the other hand, the contract was, as claimed by the plaintiffs, to secure all advances, the two deeds are consistent with the contract. But whether this was so or not, when the parties arrived at the year 1891 and entered into an agreement as to the amount then due and payable, Mr. Kneeland gave his note for the amount, secured by the premises covered by these deeds, and in this note he made the security available for past due as well as all obligations that should follow, and the parties acted under this agreement down to the death of Mr. Huntington. It might be, if the advances were made after the judgments were entered, such advances being voluntary and not required under the contract, the defendants would have some equitable rights (*Scheurer* v. *Brown*, 67 App. Div. 567, 572), but in this case the obligations were incurred, with one exception, of no practical importance here, before any of the judgments were recorded, so that if it be assumed that these judgments were recorded in such a manner as to make them liens upon the premises, they could not take precedence over the lien of the plaintiffs, whose testator advanced the money upon the strength of these mortgages, at a time when the mortgagor was at entire liberty to give the security. The mere fact that the notes were given after the judgments were entered, or might have been entered, and that these notes included the interest which had accumulated at the time, does not change the contract or its incidents, and it is established by authority that mortgages to secure future indebtedness are within the sanction of the law. (*Ackerman* v. *Hunsicker*, 85 N. Y. 43, 47, and authorities there cited; *Knapp* v. *McGowan*, 96 id. 75, 86; *Farr* v. *Nichols*,

132 id. 327, 330.)    In the case last above cited the court say : "At the time plaintiff made his indorsements upon the last two notes of the mortgagor he had no notice, actual or constructive, of the existence of the mortgage to the appellant.    He, therefore, had the same right to make indorsements upon the faith of his mortgage security as if the appellant's mortgage had not been made," citing *Ackerman* v. *Hunsicker* (*supra*).    So in the case at bar, when Mr. Huntington made the advances which formed the basis of the present judgment, he had no notice, actual or constructive (for the facts did not exist), that any of the defendants had judgments against Mr. Kneeland, and he had a right, therefore, to make such advances upon the strength of the security which had been placed in his keeping.    (See *Hyman* v. *Hauff*, 138 N. Y. 48, 54.)    In *Knapp* v. *McGowan* (*supra*) it was held that any creditor, whether solvent or insolvent, may, acting in good faith, mortgage a portion or the whole of his property to secure one or more of his creditors for any indebtedness, and it was said that the referee having found that Roche was at the time solvent, it had "never been questioned that such a debtor may mortgage his property to secure existing claims as well as future loans and advances."    (See *Delaney* v. *Valentine*, 154 N. Y. 692, 701.)    The mere fact that the mortgage in this case took the form of a deed did not operate to deprive the defendants of any rights, as there is nothing in the record to show that the entire value of the real estate had not been advanced before any of the judgments were secured.    As Mr. Kneeland was at entire liberty to have exchanged the real estate for the indebtedness in 1891, he had a right to pledge it for the payment of such debts, and subsequent lienors could not complain at such a disposition of his resources, and especially where it is not contended that they relied in any manner upon his ownership of such premises.

This discussion has proceeded upon the theory that the lien of a judgment would have the same effect as a subsequent mortgage, which is the most favorable view which could well be taken of the matter for the defendants, and, as has been pointed out, there is no ground for a court of equity to interfere to prevent the plaintiffs from foreclosing their lien.    If there is any surplus, and such a thing does not appear to have been anticipated by any of the parties to this action, the Code of Civil Procedure (§ 1633) and the General

Rules of Practice (Rule 64) provide fully for its distribution, and it does not seem necessary to further discuss the many interesting but immaterial questions which have been injected into this case.

The judgment appealed from should be affirmed, with costs.

HIRSCHBERG, P. J., JENKS, RICH and MILLER, JJ., concurred.

Judgment affirmed, with costs.