Thomas *v.* Kelsey.

---

## Thomas *vs.* Kelsey and others.

On the 16th of February, 1857, C. made and delivered to King a bond and mortgage to secure him for all sums of money he might become liable to pay by reason of indorsements he might make for C., to an amount not exceeding $10,000. The mortgage was not recorded until Sept. 2, 1857. On the 25th of July, 1857, C. made his note for $2000, payable two months from date, to the order of, and indorsed by Kelsey, which was afterwards indorsed by King, for the accommodation of C. On the 22d of August, 1857, C. made another note for $2000, at sixty days, payable to the order

Thomas *v.* Kelsey.

of S., which was indorsed by Kelsey, and afterwards by King, for the accommodation of C. Judgment was recovered upon both these notes, and collected of King. On the 10th of August, 1857, King made his own note, for $2000, procured it to be discounted, and loaned the money to C., and on the 10th of August C. gave his note, indorsed by Kelsey, to King, for this $2000, payable in two months. On this note Kelsey was not charged as indorser. On the 24th of September, 1857, a judgment by confession, in favor of King, against C., for $6000, to secure the payment of the said three notes of July 25th, and August 10th and 22d, was docketed and filed. An execution was issued upon this judgment, on which $2847.52 was collected, which was paid over to King, on account of the $2000 which he had raised by the discounting of his own note, and loaned to C. on the 10th of August, 1857. This money was so applied in pursuance of parol directions given to the attorney, by C., at the time of issuing the execution.

*Held*, 1. That the directions given by C. in respect to the application of the moneys collected upon the execution, were in strict accordance with the rules, both of law and equity. And that, independent of any direction or agreement, the law would apply that money first to the payment and satisfaction of C.'s debt to King, for the money loaned ; that being a fixed liability, at the date of the judgment, while the liability created by the indorsements was only contingent; and the latter claims being secured by the mortgage, while the former was not,

2. That the referee erred, in first applying the $2847.52, collected on the execution, to the satisfaction of King's liability on the indorsed notes. That he should have first satisfied the debt for money loaned to C. on the 10th of August, 1857, and applied the balance to the liability of King on the indorsements.

3. That the mortgage in question had priority, as a lien and claim, over the judgments entered by confession, in favor of King.

A mortgage, being a valid instrument, as between the mortgagor and mortgagee, a subsequent judgment creditor has nothing to say, in respect to its being recorded or otherwise. The recording act relates to subsequent purchasers in good faith and for a valuable consideration, and not to judgment creditors.

A subsequent judgment will not be preferred over a prior unregistered mortgage given to secure future advances or liabilities ; unless there has been a fraudulent intent, on the part of the mortgagee, in withholding his mortgage from the record.

The mere fact of retaining a mortgage six or seven months, without having it recorded, will not operate as a fraud upon subsequent creditors of the mortgagee, by the mortgagor, so as to postpone the mortgage to their judgments.

THIS was an appeal, by both parties, from a judgment entered upon the report of a referee. The following facts were found by the referee : That Eli Chamberlain, on the 16th

of February, 1857, made and delivered to Nelson King a bond and mortgage upon lands in Monroe county, conditioned "*to pay all sums of money that King might become liable to pay, by reason of any indorsements he might make at any time afterwards, of the promissory notes of said Chamberlain, or any renewal or renewals thereof; such indorsements not to exceed in the aggregate the sum of* $10,000." This mortgage was assigned to the plaintiff, by King, on the 21st of January, 1858. That King, on the 25th of July, 1857, indorsed Chamberlain's notes, payable to the order of John I. Kelsey, and indorsed by him, for $2000, at two months, upon which note judgment was obtained by the holder against the indorsers, and paid by King in April, 1858. That on the 18th of May, 1857, Cyrus W. Palmer made his note for $2000, at two months, payable to the order of Chamberlain; which note was indorsed by Chamberlain and by John I. Kelsey, at the request and for the accommodation of Chamberlain. That on the 12th of August, 1857, the Manufacturers' Bank recovered a judgment against the maker and indorsers for $2036.72, damages and costs. This judgment was paid by Kelsey, except $10 thereof, to the Manufacturers' Bank, and on the 9th of November, 1857, the bank assigned the judgment to Kelsey. On the 23d of the same month, Kelsey was, by order of the supreme court, subrogated to all the rights of the plaintiff in the action. On the 23d of March, 1858, he assigned the judgment to Griffin & Smith, who engaged to apply what was collected thereon in a particular manner. On the 22d of August, 1857, Chamberlain made his note for $2000, at two months, payable to Kelsey's order. King indorsed this note after Kelsey. Judgment was recovered against the indorsers, on this note, and was paid by King in April, 1858. On the 2d of September, 1857, King recorded his mortgage in the clerk's office of Monroe county. Kelsey had no notice of the existence of the mortgage, until after the recovery of the judgment in favor of the Manufacturers' Bank against him and others, on the note of the 18th of May, 1857.

On the 10th of August, 1857, King made his note for $2000, due in two months, at the Rochester City Bank, and loaned the proceeds to Chamberlain.   On the 24th of September, 1857, Chamberlain confessed a judgment to King, which was docketed and filed in the clerk's office of Monroe county the same day.   This judgment was given to secure King the three notes above mentioned, of July 25th, and 10th and 22d of August.   Chamberlain directed, by parol, the attorney to issue an execution thereon, and out of the money collected thereon to first pay the $2000 which King had let him have; which directions were communicated to King.   Execution was issued on that judgment, and the sum of $2847.52 was collected thereon, and the amount was paid to King on the 1st of December, 1857.   The referee also found that King kept the mortgage unrecorded, without any fraudulent intent; to which finding of fact the defendants excepted.   The plaintiff did not except to any finding of fact, but did except to the decision of the referee, excluding parol evidence tending to show the parol directions given by Chamberlain as to the application of the money to be collected on the execution to be issued on said last judgment.   The referee decided that the money collected upon the execution in King's favor, $2847.52, should be applied upon the notes in the order in which they became due; to which decision the plaintiff excepted.   The referee held that the mortgage, although not recorded until the 2d of September, 1857, was a lien for the notes indorsed by King, of the 25th of July, and the 22d of August, prior to the judgment in favor of the Manufacturers' Bank, of the 12th of August, 1857; to which decision the defendants excepted.

*W. F. Cogswell,* for the plaintiff.

*Griffin & Smith,* for the defendant Kelsey.

*Bartow & Olmsted,* for the defendant Lampson.

*By the Court,* JOHNSON, J. I think the referee erred in the application of the money collected by the execution issued upon the judgment confessed. It was not a judgment collectable by installments, like that in the case of *Mains v. Haight,* (14 *Barb.* 76,) but was all collectible immediately; and independent of any other fact, the amount collected, whenever received, would apply equally in extinguishment of each and every part of the debt, fixed and established, absolutely, by the confession and the entry of judgment thereon. But as the judgment was obviously given by way of indemnity or security for several debts and liabilities, and the rights of other creditors have intervened, it becomes important to determine how the portion of the judgment collected should in equity and justice be applied.

It was given, as will be seen upon the face of the confession, for two notes upon which King was indorser for Chamberlain, and for a debt which Chamberlain owed King for money raised and paid to him upon King's note. This last mentioned transaction was, in substance and legal effect, money lent, from King to Chamberlain, and was an actual debt, due from the latter to the former, and not a mere liability, absolute or contingent. It was an absolute debt when the judgment was confessed. The others were, at that time, mere contingent liabilities, which might or might not become fixed. King's liability, however, as the referee has found, became fixed, when the notes fell due. But even then Chamberlain was not his debtor, independent of the judgment; nor did any right of action accrue to King by reason of his liability, against Chamberlain, until he paid the notes. This, as appears by the report of the referee, was not done until judgments were obtained upon the notes and executions issued. It appears by the evidence that an execution was satisfied by King on the 23d of January, 1858, and the other some time in May following. Judgment upon one of the notes was recovered against the maker and indorsers, including King, on the 1st of December, 1857, and upon the other

Thomas *v.* Kelsey.

on the 10th of March, 1858. It was admitted upon the trial that the money collected by virtue of the execution issued on the judgment confessed by Chamberlain to King, and which was issued on the same day the judgment was confessed and entered, September 25, 1857, amounting to $2847.52, was received by the attorney from the sheriff of Erie county, to whom execution had been issued, and paid over to King on the 1st of December, 1857. This was the same day the first judgment was recovered against him, upon one of the indorsed notes, and over three months before the recovery against him upon the other note, and long before either judgment was paid and satisfied. When this amount, collected on King's execution against Chamberlain, was paid over, the note of the latter, taken as security for the money loaned, had become due, and this was the only debt, in fact, the latter then owed the former. The others rested in liability merely, and had those judgments been collected from either of the other parties, King could never have enforced the residue of his judgment against Chamberlain. The mere statement of the legal position of the parties, in respect to these claims, shows, I think, beyond any doubt, where the $2847.52 should be first applied. The law, I think, independent of any direction or agreement, would apply it, first to the payment and satisfaction of Chamberlain's debt to King. It would not compel King to apply it in payment and satisfaction of a liability which was not yet a debt due from Chamberlain to him, and which might never, in point of fact, become one, leaving his own debt, which was otherwise wholly unsecured, altogether unpaid. (*Niagara Bank* v. *Roosevelt*, 9 *Cowen*, 409, 412. *Baker* v. *Stackpole, Id.* 420, 436.) If the law would not so apply it, equity manifestly would. As between them it was the first debt due. And if the lent note was to be considered a liability merely, it was a fixed liability at the date of the judgment, while the liability created by the indorsements was then only contingent. In every respect, therefore, it was the superior claim, as between the

parties to the judgment. The other claims were secured by the mortgage. This was not, and I think that had King even paid the indorsed notes before this sum came to his hands, equity would apply it to the satisfaction of this unsecured debt. And, for the simple reason that the other demands were secured by the mortgage, and without such application, the creditor would suffer the loss of a part of his debt. It scarcely needs authority to support so plain and just a proposition. (*Bucks* v. *Albert*, 4 *J. J. Marsh.* 97. *Field* v. *Holland*, 6 *Cranch*, 8, *Blanton* v. *Rice*, 5 *Monroe*, 253. *Bacon* v. *Brown*, 1 *Bibb*, 334. *Hart* v. *Dewey*, 2 *Paige*, 207.)

There are a class of cases where, as between debtor and creditor, several debts are owing, of different degrees, and payments have been made generally, without any direction on the part of the debtor at the time, or any specific application by the creditor, in which it has been held that the law would apply the payments thus made, to the satisfaction of those debts which would most benefit the debtor. This proceeds upon the presumed intention of the debtor to do what was most beneficial to himself, and to first discharge those debts for which he had procured a surety to become bound, or which he had secured by a pledge or mortgage, or the like. But those cases have no application here. There is nothing in this case to show that the debtor would be any more benefited by one application than the other. But beside this, such rule has never, I think, been applied when such an application of the payment would deprive the creditor of a portion of his debt. The law will never presume that the debtor intended thus to prejudice his creditor, but will rather presume that he intended so to apply his money and property as to discharge all his obligations.

The directions, therefore, which Chamberlain gave, when he confessed the judgment, were in strict accordance with the rules, both of law and equity, and the question whether they were admissible in evidence is wholly immaterial. The referee erred, therefore, in first applying this sum of $2847.52 to the

satisfaction of King's liability on the indorsed note. He should have first satisfied the debt for the note, or money loaned, and applied the balance to those liabilities.

In regard to the appeal taken by the defendants, I think the referee was clearly right in holding that the plaintiff's mortgage had priority, as a lien and claim, over the defendant's judgment. The mortgage being a valid instrument, as between the mortgagor and mortgagee, a subsequent judgment creditor has nothing to say in respect to its being recorded, or otherwise. The recording act relates to subsequent purchasers in good faith and for a valuable consideration, and not to judgment creditors. That a mortgage to secure future advances is valid, is well settled. (4 *Kent's Com.* 175. *Truscott* v. *King*, 2 *Seld.* 147.) If King, the mortgagee, had so dealt with his mortgage as to mislead and defraud the defendants or their assignors, equity would doubtless give a preference to their judgment over the mortgage. But the referee has found, from the evidence, that the mortgagee was guilty of no fraudulent intent in withholding his mortgage from the record as he did. I do not see, therefore, but the case falls within the general rule, which gives an unregistered mortgage preference over a subsequent docketed judgment. The judgment only operates as a lien upon the interest the judgment debtor has, at the time, in the premises. There is no case holding that a mortgage to secure future advances, or the liability to be incurred by future indorsements, must be recorded, to protect the mortgagee against subsequent judgments. And I do not see how such a judgment can be preferred, except upon the ground of fraud on the part of the mortgagee. (*Berry* v. *Mutual Ins. Co.*, 2 *John. Ch.* 603.) I am not prepared to hold that the mere fact of retaining a mortgage six or seven months, without having it recorded, operates as a fraud upon subsequent creditors of the mortgagee, by the mortgagor, so as to postpone the mortgage to their judgments. The rule laid down by Chancellor Kent, in his Commentaries, (*vol.* 4, *pp.* 175, 6,) does not sanction any such doctrine. What is there said in regard to

notice of the agreement, relates obviously to what appears upon the face of the instrument as the agreement between the parties, and not to the recording of the instrument, under the recording act. The question under consideration is, whether such a mortgagee can claim, as against subsequent mortgagees and judgment creditors, for advances which the instrument upon its face and by its terms was not given to secure. In this respect, therefore, the decision of the referee was correct, and the judgment should be affirmed. But, for the error in regard to the application of the moneys collected upon the execution issued upon the judgment by confession, the judgment must be reversed, and a new trial granted, with costs to abide the event.

[MONROE GENERAL TERM, December 5, 1859. *T. R. Strong, Welles* and *Johnson,* Justices.]