HARMAN ACKERMAN, RESPONDENT, *v.* ELIAS HUNSICKER, APPELLANT, IMPLEADED WITH JACOB LEVI AND OTHERS.

*Mortgage to secure future advances—where the right to make the advances is optional with the mortgagee, each advance is subject to all incumbrances recorded prior to the time of making it—the rule is otherwise where the mortgagee is bound to make the advances.*

A mortgage given to secure future advances, which the mortgagee has the option to make or not, as he chooses, is, as to each advance made upon it, to be regarded as a fresh mortgage, and is, as to such advance, subject to the lien of all incumbrances which are duly recorded at the time it is made, whether the mortgagee have actual notice of them or not.

In those cases in which the mortgagee is bound to make the future advances, this rule does not apply.

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee.

The action was brought to foreclose a mortgage, given as collateral to a bond, executed by one Levi, to the plaintiff, and conditioned to save "Ackerman harmless from any and all indorsements he has made, or may hereafter make, for the said Levi, or the firm of Levi & Miller, up to the amount of six thousand dollars." The bond and mortgage bore date March 2, 1874, and the mortgage was recorded March 3, 1874, in the Onondaga county clerk's office. Levi also executed to Ackerman a chattel mortgage, containing a like condition. After the execution of these securities,

and during the year 1874, Ackerman indorsed and subsequently paid notes for the accommodation of Levi, or Levi & Miller, of date and amount as follows: May 7, $244; May 26, $550; July 17, $400; August 21, $1,000; September 9, $60; September 12, $1,200; September 23, $1,574, and October 16, $1,600. On September 8 Levi paid to Ackerman $3,150, and Ackerman surrendered a note which he held against Levi, not indorsed, for $864.30, leaving a credit of $2,285.61, to be applied upon plaintiff's claim under the mortgage, as of September 8, 1874. Subsequently to the execution of the said securities certain judgments were recovered in this court, which were liens on the mortgaged premises, and were afterward assigned to the defendant Hunsicker. Their amounts, and the dates when they became liens, are as follows: May 25, 1874, $1,132.99; August 6, 1874, $979.69; October 5, 1874, $1,142.25. The plaintiff had no actual notice of these judgments when he made the indorsements above stated. The appellant insisted that the lien of the judgments was prior to that of the mortgage, as to the indorsements made after the judgments were docketed. The referee held that the lien of the mortgage is prior to that of the judgments for the whole amount due to the plaintiff for money advanced by him to take up his indorsements, which amount the referee found to be the sum of $4,779.19, on the 26th of January, 1876, the date of his report.

*George Barrow*, for the appellant. Under the registry system the judgments took precedence of all advances or indorsements made after they were docketed in the Onondaga county clerk's office, the docketing being sufficient notice, no actual notice being required. (*Spador* v. *Lawlor*, 17 Ohio, 371; *Ter Hoven* v. *Kerns*, 2 Barb., 96; *Parmentier* v. *Gillespie*, 9 Barb., 86; *McLure* v. *Roman*, 52 Penn. St., 458; *Parker* v. *Jacoby*, 3 Grant, 300; *Boswell* v. *Goodwin*, 31 Conn., 74; *Hartley* v. *Kerlin*, 45 Penn. St., 49; *Hubbard* v. *Savage*, 8 Conn., 215, 6 Id., 37, 7 Id., 387; *Kramer* v. *Farmers' Bank*, 15 Ohio, 253; *Bank of Montgomery's Appeal*, 36 Penn., 170; *Ladue* v. *Detroit & M. R. R. Co.*, 13 Mich., 380; *Hall* v. *Crouse*, 13 Hun, 557.)

*Cornelius E. Stephens*, for the respondent. The mortgage was good as against subsequent incumbrances. A record of such a mortgage is notice to a subsequent purchaser, or an incumbrancer for value, so as to postpone the latter to the lien for advances made before notice from the subsequent incumbrancer. (*Robinson* v. *Williams*, 22 N. Y., 380; *Truscott* v. *King*, 6 Barb., 346; *Stuyvesant* v. *Hall*, 2 Barb. Ch., 151; *Talmadge* v. *Wilgers*, 4 Edw., 239, note; *Howard Ins. Co.* v. *Halsey*, 8 N. Y., 271; *Wheelwright* v. *De Peyster*, 4 Edw., 232; *King* v. *McVicker*, 3 Sandf. Ch., 192; *Thomas* v. *Kelsey*, 30 Barb., 268; *Youngs* v. *Wilson*, 27 N. Y., 351; *Williamson* v. *Brown*, 15 N. Y., 354.)

SMITH, J.:

It does not appear that Ackerman was under any obligation to indorse for Levy or his firm; it was optional with him to do so; and the question is whether, as to indorsements voluntarily made by him after the judgments were docketed, the lien of his mortgage is not to be postponed to that of the judgments. Had he taken a new mortgage to secure him for those subsequent indorsements at the time when he made them, no one will question but that such new mortgage would have been subject to the lien of the judgments. The docket would have been constructive notice to him. But it is said in behalf of the respondent, that as his mortgage was recorded prior to the docketing of the judgments, they were not constructive notice to him. For the appellant it is insisted that as to indorsements made subsequent to the docketing of the judgments, the plaintiff is a subsequent incumbrancer, and is chargeable with notice.

An examination of the authorities shows that the question cannot be regarded as settled in this State. There are numerous cases holding that a mortgage, judgment or other security, may be taken and held for future advances or responsibilities. Chancellor Kent so held in *Brinkerhoff* v. *Marvin* (5 Johns. Ch., 320), and in the same case he intimated that advances made or responsibilities incurred after a subsequent judgment, will not be covered by such security (p. 327). He reiterated the same opinion in *James* v. *Johnson* (6 Johns. Ch., 417, 429). In *Lansing* v. *Woodworth* (1 Sandf.

Ch., 43), and *Barry* v. *Merchants' Exch. Co.* (Id., 280), Assistant Vice Chancellor SANDFORD expressed himself to the same effect, citing *Brinkerhoff* v. *Marvin;* and in *Craig* v. *Tappin* (2 Sandf. Ch., 85), and *Goodhue* v. *Berrien* (Id., 630), he decided the point in accordance with the opinion above referred to. In the later case of *Truscott* v. *King* (6 Barb., 346), the Supreme Court at General Term in the third district, held that the receiving of a subsequent mortgage was not constructive notice to a creditor who had taken a prior judgment as security for future advances, and that such judgment creditor was to be protected in his advances made after the recording of the mortgage and before he had actual notice of such mortgage. It did not appear, in that case, that the judgment creditor bound himself to make future advances. But the case is of doubtful authority upon the question now under consideration. It was reversed by the Court of Appeals (6 N. Y., 147), upon another point, indeed, but upon one equally fatal to the case as an authority upon this question. The reversal was upon the ground that the judgment had been paid and satisfied. That being the case, the question of the priority of lien was not involved, and all that was said about it was unnecessary to a decision of the case, and was mere *dictum.* Besides, of the two cases cited by PARKER, J., who delivered the opinion in the Supreme Court, to wit, *Gordon* v. *Graham* (7 Viner's Abr., 52; 2 Eq. Cas. Abridged, 598), and *Shirras* v. *Caig* (7 Cranch, 34), the first—an English case—has no application to our system of registry; and furthermore, it has been overruled by the House of Lords (*Hopkinson* v. *Rolt*, 7 Jur., N. S., 1,209; 5 Law Times, N. S., 90); and as to the second case, *Shirras* v. *Caig*, the report of it does not show that the subsequent conveyance had been recorded, and that being the case, actual notice was requisite to affect the holder of the prior security, even as to subsequent voluntary advances.

The case of *Thomas* v. *Kelsey* (30 Barb., 268), cited by the respondent's counsel, is not in point. All that that case holds, having even a remote bearing upon the one in hand, is that the lien of a mortgage given to secure further advances, is superior to the lien of a subsequent judgment, as to advances made *prior* to the docketing of the judgment, although the mortgage was not re-

corded, provided the omission to record it was not the result of a fraudulent design; and in *Robinson* v. *Williams* (22 N. Y., 380) the advances were made prior to the docketing of the defendant's judgment.

The case of *Hall v. Crouse* (13 Hun, 557), cited by the respondents' counsel, is also not in point, it appearing that the holder of the prior mortgage in that case had *actual* notice of the subsequent judgment, before he rendered the services, as to which he claimed his mortgage was a prior lien.

These are all the cases in this State cited by counsel on either side, and I know of no other bearing upon the question.

In several of the other States, the point has been adjudged in accordance with the views of the appellants' counsel. It has been so held in Pennsylvania, Ohio, Illinois and Michigan. Some of the leading cases are *Ter Hoven* v. *Kerns* (2 Penn. St., 96); *Bank of Montgomery County's Appeal* (36 Penn. [12 Casey], 170; *Spader* v. *Lawler* (17 Ohio, 371); *Collins* v. *Carlisle* (13 Ill., 254), and *Ladue* v. *Detroit & Milwaukee R. R. Co.* (13 Mich., 380). In *Ter Hoven* v. *Kerns* (*supra*) the question was fully discussed. It was there held that a judgment given to secure further advances, which were optional, was not a lien as against a subsequent judgment rendered before such advances were made. The judgment was treated by the court as standing upon the same footing as mortgages. The reasoning adopted was, in substance, that a mortgage to secure future advances, which are optional, does not take effect between the parties as a mortgage or incumbrance until some advance has been made; that if not made until after another mortgage or incumbrance has been recorded, it is, in fact, as to such after advances, a subsequent and not a prior incumbrance; and that the record of the subsequently recorded mortgage is notice, as to such after advances, as much as if the mortgage first recorded had not been executed until after such advances were made. These views are affirmed by the other cases above cited, and are very forcibly supported by the exhaustive opinion of CHRISTIANCY, J., in the case of *Ladue*.

In Vermont, a different rule has been laid down. The case of *Daniels* v. *McColvin* (16 Vt., 300) held that express notice of a sub-

sequent incumbrance is required in order to stop further advances upon a mortgage, to secure future advances, and in addition to this, a formal protest against the first mortgagee continuing to increase the indebtedness under his mortgage. That rule, it is believed, prevails nowhere else. Judge REDFIELD, afterwards Chief Justice, dissented.

The rule laid down in *Ter Hoven* v. *Kerns*, and the other concurring cases above cited, seems to us reasonable. It proceeds upon the ground that as, by our law, a mortgage passes no estate in the land, and is simply a lien, it follows that a mortgage given to cover future advances, which the mortgagee has the option to make or not, as he chooses, is a mere shadow or nullity until some advance is made upon it, and then it is enforceable only to the extent of the advance, and that, as to each subsequent advance, it is to be regarded as a fresh mortgage, subject to the lien of incumbrances duly recorded before the advance is made. True, this rule makes it necessary for the holder of such mortgage to search the record for intermediate incumbrances on making each fresh advance, but that is an inconvenience to which every person is subject, who takes a mortgage and relies upon it as a security. The rule does not apply, of course, to the case of a mortgagee who is bound to make the future advances. Thus limited, it does not appear to be in conflict with the weight of authority in this State, and I think it should be applied to this case. I am of the opinion, therefore, that the record of the judgments set up by the defendant was constructive notice to the plaintiff, and that they are severally to be preferred to the lien of his mortgage, as to all indorsements made by him after the respective judgments were docketed.

The judgment should be reversed, and a new trial ordered before another referee, costs to abide event.

TALCOTT, P. J., and HARDIN, J., concurred.

Ordered accordingly.