HENRY HYMAN *v.* ANNA HAUFF et al.

JAMES ROGERS, Appellant, *v.* THE BUFFALO DOOR AND SASH Co. et al., Respondents.

The rule that the lien of a mortgage to secure voluntary future advances will be postponed in favor of the holder of a subsequent mortgage, as to such advances as are made after knowledge on the part of the prior mortgagee of the existence of a subsequent mortgage, if it controls in this state, as to which *quære*, only applies where it appears as matter of law from the inspection of the instrument, that the advances are purely and plainly optional, so that the prior mortgagee may decline to make the advances at his pleasure without risk of damage or loss; it does not apply where an obligation to advance exists, and the right to decline depends upon facts *dehors* the instrument.

The owners of certain premises entered into contract with the B. D. & S. Co. for the furnishing by the latter of certain materials to be used in the erection of buildings on the premises. The performance of the contract by the owners was secured by mortgage on the premises. By the contract the owners agreed to make payments from time to time as the materials were furnished; in case they failed to make payments as prescribed, it was provided that the company might, at its option, cease to deliver materials, and thereupon the mortgage should become due to the extent of the goods delivered. It was also provided that in case any lien or incumbrance was filed or docketed against or placed upon the premises the company, at its option, might cease to deliver materials, and unless the lien or incumbrance was discharged of record within ten days, that the mortgage should become due to the extent of the materials then delivered. Payments were not made as provided and subsequent liens and incumbrances were placed upon the property. The company,

notwithstanding, continued to make deliveries under the contract. Upon foreclosure of a prior mortgage a surplus having arisen, in pro= ceedings to determine the rights of the subsequent lienors thereto, it was claimed by the holder of a mortgage subsequent to that executed to said company, that its mortgage was to secure advances which were optional merely, and that as to all such advances as were made after notice of his mortgage he had the prior lien. *Held*, untenable, that the mortgage to the company was not to secure advances purely optional, as at its inception and upon its face the company was bound to perform the contract, and its right to decline to perform depended upon the existence of facts *dehors* the instrument, and if it elected to waive the option and to go on and complete its contract, this gave a subsequent mortgagee no right to question the equity of its claim to payment; and so, that said company was entitled to a preference.

Also *held*, that the court had power in its discretion to charge the expenses of the reference upon the holder of the subsequent mortgage, and that the exercise of this discretion was not reviewable here.

(Argued March 13, 1893; decided April 11, 1893.)

APPEAL from order of the General Term of the Court of Common Pleas for the city and county of New York, made February 6, 1893, which affirmed an order of Special Term confirming the report of a referee directing the distribution of surplus moneys in an action brought for the foreclosure of a mortgage.

The facts, so far as material, are stated in the opinion.

*George G. Munger* for appellant. The mortgage from Muller & Hauff to the Buffalo Door and Sash Company was an optional mortgage to secure future advances, and became subordinate to the McCormack mortgage for all advances made after knowledge of the existence of that mortgage. (*Gordon* v. *Graham*, 2 Eq. Cas. 598; *Blunden* v. *Desant*, 2 D. & W. 405; *Shaw* v. *Neale*, 6 H. L. Cas. 581; *Hopkinson* v. *Rolt*, 9 id. 514; *Ackerman* v. *Hunsicker*, 85 id. 43; *Truscott* v. *King*, 6 N. Y. 147; *Montgomery's Appeal*, 36 Penn. St. 170; *Spader* v. *Lawler*, 17 Ohio, 371; *Ladue* v. *City of Detroit*, 13 Mich. 390; 29 Gratt. 483; *Collins* v. *Carlisle*, 13 Ill. 254; *Boswell* v. *Goodwin*, 31 Conn. 74; *Nelson* v. *Brazee*, 7 J. J. Marsh. 401; *Lanahan* v. *Lawton*,

23 At. Rep. 476; *Finlayson* v. *Crooks,* 49 N. W. Rep. 398; *Ward* v. *Cooke,* 17 N. J. Eq. 93; 1 Hilliard on Mort. [4th ed.] 319, § 51; 1 Herm. on Mort. § 270; 4 Kent's Comm. [12th ed.] 176; 1 Jones on Mort. [4th ed.] 369; Id. [3d ed.] § 370; 3 Pom. Eq. Juris. § 1199; 2 Washb. on Real. Prop. [5th ed.] 159; 15 Am. & Eng. Ency. of Law, 799; *Taylor* v. *Cornelius,* 60 Penn. St. 187; *Taylor* v. *Le Bar,* 25 N. J. Eq. 222; *Platt* v. *Griffith,* 27 id. 207; *Moroney's Appeal,* 24 Penn. St. 372; *Alexandria* v. *Thomas,* 29 Gratt. 483; *Brinkmeyer* v. *Brownell,* 55 Ind. 487; *Griffin* v. *Burnett,* 4 Edw. Ch. 673.) The assignment of the McCormack mortgage by McCormack to Rogers on February 14, 1891, carried the entire ownership of said mortgage to the assignee to the extent of the indebtedness of the assignor to the assignee at the time of the assignment, which was $2,195.99, and the recording of it was constructive notice to the door and sash company when they commenced meddling with that mortgage, and rendered void and of no effect the "subordinating" agreement which they procured from McCormack. (*Viele* v. *Judson,* 82 N. Y. 32; *Belden* v. *Meeker,* 47 id. 307; *Brewster* v. *Caines,* 103 id. 556; *Heilbrun* v. *Hammond,* 13 Hun, 474; *Bacon* v. *Van Schoonhoven,* 87 N. Y. 446.) The clauses in the mortgage to McCormack that they were given subject to prior mortgages on the property not exceeding in the aggregate $144,700, have nothing to do with the questions involved in this proceeding. (*Binsse* v. *Paige,* 1 Keyes, 87; *Stebbins* v. *Hall,* 29 Barb. 524; *Tillotson* v. *Boyd,* 4 Sandf. S. C. 516; *Murray* v. *Smith,* 1 Duer, 412.) At least said order should be reversed so far as it holds said Rogers personally liable to Cassidy & Adler in the sum of $503.62 for the "expenses" of the reference. (*Oppenheimer* v. *Walker,* 3 Hun, 30.)

*Tallmadge W. Foster* for The Buffalo Door and Sash Co., respondent. There is no evidence that Cassidy & Adler had actual notice of the assignment of the McCormack mortgage to Rogers, and the record of the assignment was not notice.

(*Ackerman* v. *Hunsicker*, 85 N. Y. 43.) The record of the McCormack mortgage was not notice. (*Ackerman* v. *Hunsicker*, 85 N. Y. 43.) Assuming, however, that the Buffalo Door and Sash Company had actual notice of the McCormack mortgage some time in April, 1891, we still maintain that, even as to advances made after that date, the Buffalo Door and Sash Company's mortgage would take precedence of the McCormack mortgage. (1 Jones on Mort. [4th ed.] § 373 ; Pom. Eq. Juris. § 1199 ; *Witczinski* v. *Everman*, 51 Miss. 84 ; *Brinkmeyer* v. *Helbling*, 57 Ind. 435 ; *Brinkmeyer* v. *Brownell*, 55 id. 487 ; *Rowan* v. *S. R. Co.*, 29 Conn. 282 ; *Griffin* v. *Burtnett*, 4 Edw. Ch. 673 ; *Ackerman* v. *Hunsicker*, 85 N. Y. 43.)

*Thomas C. Ennever* for Cassidy & Adler, respondents. The claims of James Rogers are subject and subordinate to the claim of Cassidy & Adler, for the reason that Cassidy & Adler, whose mortgage was first recorded, had no notice of the subsequent mortgages until they had advanced the full consideration of their mortgage. (*Ackerman* v. *Hunsicker*, 85 N. Y. 43.) The mortgage to James H. Lee and others (Buffalo Door and Sash Company) was prior to the claims of James Rogers, for the reason that they had no notice of the assignment of the McCormack mortgage to James Rogers. (*Ackerman* v. *Hunsicker*, 85 N. Y. 43.) The court had power to charge the expense of the reference upon the unsuccessful claimant. (*Lawton* v. *Sager*, 11 Barb. 349 ; *Bernier* v. *Schoonmaker*, 29 How. Pr. 411 ; *Hall* v. *MacDonald*, 105 N. Y. 667.)

O'BRIEN, J. This was a controversy between subsequent lienors as to the right to surplus moneys arising upon foreclosure sale in the action. Two of the defendants owned seven lots in the city of New York, upon which they desired to construct seven dwellings. They first gave a mortgage to the plaintiff to secure the payment of money advanced or to be advanced during the progress of the work. They sub-

sequently made contracts with various parties for materials and work to be delivered and performed in the future, as specified in the contracts, and executed bonds and mortgages, absolute on their face, but intended by the parties to secure the payment of the moneys stipulated in the contracts. The mortgages were delivered and recorded in the following order : The Lorillard Brick Works Co., $6,000, October 28, 1890, recorded November 8, 1890 ; The Buffalo Door and Sash Co., $16,700, December 16, 1890, recorded December 22, 1890 ; Cassidy & Adler, $7,500, December 16, 1890, recorded December 23, 1890 ; Michael McCormick, $3,000, December 19, 1890, recorded December 27, 1890. There was a surplus of $27,687.76 upon the sale after paying the plaintiff's mortgage and the costs. The referee appointed to report upon the respective claims to this surplus made full findings of fact and law, in which he held that distribution should be made as follows : (1) The expenses and costs of the proceedings ; (2) the receiver of the Lorillard Co. $6,000, with interest from October 25, 1891 ; (3) the Buffalo Co. $14,200, with interest from August 6, 1891 ; (4) Cassidy & Adler $7,500, with interest from June 19, 1890. This exhausted the surplus and left a considerable sum upon the last-named claim unpaid. The mortgage of McCormick, the payment of which was postponed for the other claims, which were preferred, had been assigned to James Rogers, who insisted, in the proceedings, that his claim, though subsequent in point of time, was, nevertheless, entitled to preference over the Buffalo Company and Cassidy & Adler, on account of certain equities in his favor, which will be hereafter considered. The referee decided against his claim, and the court confirmed the report and ordered the moneys to be distributed accordingly. The court also ordered that Rogers pay the sum of $503.62 to Cassidy & Adler to reimburse them for a portion of the loss sustained by them in the depletion of the fund, by the payment of costs caused by his unsuccessful contention. He is the only party who has appealed, and the questions are raised by his exceptions to the report. It is only necessary to state generally the attitude of the

appellant, with respect to the claim of the Buffalo Company, in order to present the main question raised by his appeal. That mortgage, it will be remembered, was given by the owners to secure their payments, as stipulated in the contract between them and the company, for furnishing sash, doors and other trim for the seven houses. It bound the owners to make payments in cash to the company in different sums, at different times in the future, and as the materials were furnished. It was agreed that if the owners should fail to make the payments, according to the terms of the contract, the company might, at its option, cease to deliver materials, and thereupon the mortgage should become due to the extent of the goods delivered. The payments were not made as provided. The instrument also contained the following provision : " It is further agreed that in case any lien or incumbrance of any kind shall be filed or docketed against or placed upon the said premises, or any part thereof, during the performance of this contract, the parties of the first part may, at their option, cease to deliver materials hereunder, and unless such lien or incumbrance shall be discharged of record within ten days, the said bond and mortgage shall thereupon become due and payable to the extent of the materials which shall then have been delivered."

There were liens and incumbrances subsequently placed upon the property by the owners, as we have seen. The appellant contends, upon substantially these facts, that the mortgage was to secure future advances which were optional merely, and that as to all such advances, made after notice of his mortgage, he has the prior lien. If he is right in this position sufficient of the claims which have been held superior to his would be postponed to enable him to realize upon his debt. The doctrine applicable to mortgages given to secure voluntary future advances, as affected by subsequent liens, has been much discussed in England and seems to have been settled there in accordance with the contention of the appellant, though not without controversy and strong dissent. (*Gordon* v. *Graham*, 2 Eq. Cas. Abr. 598; *Hopkinson* v.

*Rolt*, 9 H. L. Cases, 514; *London & C. Bkg. Co.* v. *Ratcliffe*, 6 App. Cases, H. L. 722; *Bradford Bkg. Co. Briggs*, 12 id. 29.)

These cases hold that the lien of a mortgage, to secure voluntary future advances, will be postponed, as to such advances as are made after knowledge of the existence of a subsequent mortgage, in favor of the holder of the latter. Substantially, this rule seems to have been followed in several of our sister states. (*Montgomery's Appeal*, 36 Penn. St. 170; *Spader* v. *Lawler*, 17 Ohio, 371; *Ladue* v. *Detroit*, 13 Mich. 390; *Collins* v. *Carlile*, 13 Ill. 254; *Boswell* v. *Goodwin*, 31 Conn. 74.)

The general doctrine as announced in *Hopkinson* v. *Rolt* (*supra*), which is the leading case in England, has been referred to by this court with approval, though, it seems to me, that the precise question was not decided. (*Ackerman* v. *Hunsicker*, 85 N. Y. 43; *Truscott* v. *King*, 6 id. 147.)

Without attempting to discuss the equity of the rule or to point out its precise limits and application it is quite clear that it can operate only against a security for future advances, purely and plainly optional, the holder of which has actual notice of a subsequent mortgage for an existing debt or liability. The mortgage which the appellant holds was given to McCormick to secure to him the payment of certain sums of money for work to be performed in the future in the construction of the houses. It is not clear from the record that the contract which it was given to secure was any more obligatory upon him than was the other contract with the Buffalo Company, and if it was not, then the appellant has no superior equity in his favor. But we think that the mortgage to the Buffalo Company was not to secure future optional advances within the rule referred to. At its inception and upon its face, both parties were bound to perform it, at the peril of being subjected to damages. True, it contains a provision that if the owner fails to make his payments for the property furnished, as they become due, then the other party is absolved from the obligation to make further per-

formance.   But that is the case with most executory contracts, and the clause expresses nothing more than what the law would imply ordinarily upon the same facts.   The other provision was that the obligation to make further delivery of materials should cease whenever the owner permitted any subsequent lien or incumbrance to be filed.   These provisions were both for the benefit of the Buffalo Company, and if it elected to waive them and go on and complete its contract according to its terms, no subsequent mortgagee has any right to question the equity of its claim to payment.   If the party in whose favor the stipulation was made chooses to waive it a stranger to the contract cannot complain or derive any advantage or raise any question based upon a fact that in no way concerned him.   When it appears as matter of law, from an inspection of the instrument, that the prior mortgagee may decline to make the advances at his pleasure, without taking the risk of subjecting himself to damages or loss, the rule can be defended upon equitable principles.   But where the obligation to advance exists, or where the right to decline depends upon facts *dehors* the instrument, and which may be the subject of dispute or contention, the holder of the first security is warranted in making the advances in reliance upon his mortgage.   In the present case the Buffalo Company had no right to refuse further delivery of goods unless it could establish a breach of some of the conditions of the contract upon which the right to refuse depended.   This it could not do by a mere production and inspection of the writing, but would be obliged to resort to proof of extraneous facts which might be disputed, and, in some cases, it is quite conceivable that a party might fail in the attempt to establish them to the satisfaction of a court or jury.   It would be incorrect in law and unjust in practice to hold that goods, delivered under such a contract, were subject to the rule applicable to mere optional advances.   Moreover this contract may have been, and, we must assume was, a profitable one for the parties who agreed to furnish the building materials.   They could not decline to go on, when the subsequent mortgage was given,

without sacrificing profits to be derived from a full performance. The company not only protected itself by conditions in the contract for its own benefit, but by mortgage security. It was entitled to all the fruits of the contract, and, though the other party did not perform in all respects, the company could waive the omission and still go on earning these fruits, upon the faith of its security. To hold that, under such circumstances, a subsequent mortgagee and a stranger could arrest the performance of such a contract, against the will of the immediate parties, would be, practically, to impair its obligations. All the cases hold that the principle does not apply when a party subjects himself to damages by declining to perform or to make the advances, and, if not, why should it apply to a case where the loss of the profits or fruits of the contract must follow a failure or omission to perform. In many cases the profits which a party is to derive from full performance of his contract are much larger than any damages which the other party to it could recover against him for failure to perform.

It appears that the appellant's mortgage was upon its face expressly subject to all prior mortgages, and, further, that McCormick, after the assignment of it to appellant as collateral security, executed an instrument to the Buffalo Company in which he stipulated that, irrespective of the date of the delivery of the material, the prior mortgage should be and remain the superior security. Of course, the object of the stipulation was to avoid the very question we have been considering. What effect it had and how far, if at all, it bound the appellant and what significance is to be attached to this clause in the mortgage, expressly subordinating it to all mortgages of prior date and record, are questions of interest ably discussed upon the briefs of counsel, and which have received the attention of the courts below. But as the appellant's claim of equitable priority, which, so far as he is concerned, is fundamental, cannot be sustained, it is unnecessary to consider the other questions.

In regard to the question of costs it is sufficient to say that

the court below had the power to impose costs upon any of the parties, payable either personally or out of the fund. It was, therefore, a matter resting in discretion, and that part of the order presents no question of law which this court has jurisdiction to review.

It follows that the order appealed from must be affirmed, with costs.

All concur.

Order affirmed.