ARNOLD L. SCHEURER, Plaintiff, *v.* CHARLES BROWN and Others, Defendants.

AUGUSTA A. ROBY, Plaintiff, *v.* MARY J. SULLIVAN and Others, Defendants.

WILLIAM WAGNER and ADOLPH WAGNER, Appellants; MICHAEL SCHIFF, Respondent.

*Assignee of a mortgage — he takes subject to equities — mortgage to secure future advances — how far valid as against a junior incumbrancer.*

An assignee of a mortgage takes subject to all latent equities that exist in favor of the mortgagor and of third parties, notwithstanding that at the time of the assignment the assignor makes an affidavit that the mortgage is a valid security for the whole amount secured thereby, and that the assignee pays full value for the same.

Where a mortgage given to secure future advances leaves it optional with the mortgagee whether or not to make such advances, he will not, as against a junior incumbrancer, be protected in making advances after notice of the existence of the junior incumbrance.

APPEAL by the defendants, William Wagner and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 5th day of February, 1901, overruling said defendants' exceptions to the rulings and findings of a referee in surplus proceedings and confirming the report of said referee which awarded priority to the defendant Michael Schiff as against the appellants upon his claim on a fourth bond and mortgage.

*Henry M. Dater*, for the appellants.

*Charles I. Schampain*, for the respondent.

HATCH, J.:

The only question necessary to be considered in the disposition of this appeal is as to the priority of right to payment of the mortgages held by Michael Schiff and William Wagner, respectively. All of the other persons holding liens upon the property have either been paid or are subordinated to the right of the respective mortgages, and the claims represented by them are more than sufficient to exhaust the fund.

It appears from the record that on the 6th day of October, 1898, Mary J. Sullivan, the owner of the property, the sale of which under foreclosure had produced the surplus, the subject of this proceeding, made, executed and delivered to Edward Felbel her bond and mortgage for the sum of $2,500, with interest at six per cent, payable on the 6th day of January, 1899. Thereafter, and on the 1st day of November, 1898, Felbel assigned this mortgage to Michael Schiff, the respondent herein, who is now the owner thereof. On the 7th day of October, 1898, the said Mary J. Sullivan executed and delivered to William and Adolph Wagner a bond and mortgage to secure the sum of $1,800, this indebtedness being represented by a certain promissory note and a balance due for iron work furnished upon the building owned by Sullivan. Both of these mortgages have been foreclosed, and decrees of foreclosure entered thereon.

It is claimed by the appellants that the mortgage given by Sullivan to Felbel was without consideration moving from Felbel, and was in fact executed for the benefit of Sullivan and is in fraud of the appellants' right. The circumstances surrounding the execution

and delivery of this mortgage are found in the testimony of Felbel, who states that the mortgage was brought to him by John Sullivan, the father and agent of Mary J. Sullivan, who requested him to take the same, and he negotiated with Sullivan concerning it. At the time of its delivery to him he advanced in money fifty dollars. by check payable to John Sullivan, and he leaves this payment somewhat in doubt as to whether the check was intended to be an advance upon the mortgage or a loan to Sullivan. No other money was paid to John or Mary J. Sullivan as a consideration for the mortgage by Felbel, nor was there any other consideration for the mortgage paid in money. Felbel states that he had made some advances to John Sullivan, represented by checks, prior to the time this mortgage was delivered to him. The checks themselves were not produced, and no proof was adduced from which it could be determined how much the indebtedness of Mary J. or John Sullivan was at the time of the delivery of the mortgage. The only statement concerning its amount was by Felbel, that Mary J. Sullivan did not owe him as much as $500, and it is clearly evident from the whole of Felbel's testimony that the amount of his advances to either of the Sullivans was small, and the referee would have been justified in finding that there was no indebtedness owing by Mary J. Sullivan to Felbel at the time of the delivery of the mortgage. It further appeared by the testimony of Felbel that thereafter he constituted John Sullivan his agent to negotiate a sale of this mortgage, and that subsequently, on the date above mentioned, Michael Schiff became its purchaser.

According to Schiff's testimony, he paid to Sullivan at the time of the assignment of the mortgage to him $2,000, and that one Brown paid something more, while Brown testified that Schiff only paid $1,300 in cash, which was delivered to Sullivan, and that he (Brown) gave his check payable to Felbel for $700, and in addition thereto he paid attorney and some other fees not mentioned, amounting to $300. So that the purchase price of the mortgage, as appears by the testimony of all the parties, upon its assignment to Schiff was $2,300. The check given by Brown was delivered to Sullivan, who in turn delivered it to Felbel; and the latter testified that he paid over to Sullivan a part of the same, and that he still owed Sullivan a portion of it, how much does not clearly appear.

FIRST DEPARTMENT, JANUARY TERM, 1902.            [Vol. 67.

It is, therefore, evident that at the time when this mortgage was executed and delivered to Felbel, nothing was paid therefor except the $50, which furnished its only consideration, unless the hazy statement of an indebtedness as to which the only proof is that it was not "as much" as $500, can be considered as entering into the consideration. The mortgage executed to the Wagners was delivered and recorded prior to the transfer to Schiff, and was then a valid outstanding lien upon these premises, which, as against Felbel, the Wagners were entitled to enforce, less the sum which could be considered as having passed from Felbel to the Sullivans, and their indebtedness to him when the mortgage was delivered.

It is a general rule of law that one who takes the assignment of a mortgage takes it subject to all latent equities that exist in favor of the mortgagor, and also subject to like equities in favor of third persons. (*Schafer* v. *Reilly*, 50 N. Y. 61.) The language of Lord THURLOW in *Davies* v. *Austen*, 1 Ves. 247, that "a purchaser of a chose in action must always abide by the case of the person from whom he buys," has been adopted and uniformly applied by the courts of this State. (*Viele* v. *Judson*, 82 N. Y. 32; *Trustees of Union College* v. *Wheeler*, 61 id. 88; *Owen* v. *Evans*, 134 id. 514.) Nor is such result changed by the fact that at the time of the transfer the assignor makes affidavit that the mortgage is a valid security for the whole amount secured by it, and the assignee pays full value for the same. (*Schafer* v. *Reilly*, *supra*.) Such acts cannot affect the equities of third parties.

There is some evidence in the present case that the assignee, Schiff, at the time when he purchased this mortgage, had notice that the sums secured to be paid by it had not been advanced. Felbel at the time of the assignment made an affidavit that he was the owner of the mortgage. Such affidavit does not appear in the record, but it is singularly suggestive that no one claims that the affidavit showed that he had advanced the face of the mortgage. Upon that subject, Felbel states that he made the affidavit and limited it to the fact that he was the owner, and that he did not tell anybody at the time of the transfer as to the amount due upon it. Schiff's statement is that he remembers one question being asked of Felbel, and that was whether this mortgage belonged to him, and he follows this by the statement that he never heard

that $2,500 was not due upon it. It is singularly suggestive that when Felbel was required to make his affidavit no suggestion was made or question asked as to the amount due upon this mortgage, or whether the money represented by it had been advanced. Upon this subject, Mr. David Friedman, a clerk in the office of the attorney for Mr. Schiff, who searched the title and was present at the time of the transfer, gives pertinent and instructive testimony. He, like the other witnesses, states that he did not hear it intimated that the face of the mortgage had not been advanced, but he does say that he told Brown and Schiff about a decision in the Court of Appeals, "that where a mortgage is given for security it isn't as valid as a mortgage passed for a valid consideration." It would seem to be evident, therefore, that some discussion was had respecting the consideration for this mortgage. No one, we think, can read the testimony without, at least, a misgiving that it was understood that the actual money had not been paid as a consideration for the mortgage, and the referee would have been justified in finding that Schiff in fact took the mortgage with knowledge of all the facts; but, however this may be, it can make no difference in the legal conclusion, established by the authority we have cited, that this mortgage had no valid inception prior to its assignment to Schiff, and at the time of such inception it was subject to the lien of the Wagner mortgage, which in consequence now attaches as a superior lien to this surplus.

Escape is sought from this conclusion, based upon a claim that the mortgage to Felbel was in fact given to secure advances to be paid to workmen and others in the construction of a building upon which it was a lien. There is nothing which appears in the mortgage itself showing such fact. That instrument recites a present indebtedness of $2,500 and is in the ordinary form to secure the payment of a present existing indebtedness for a sum of money. The testimony upon this subject is made up of Felbel's guesses; and search of this record will be in vain to find, either in the documentary proof or the oral testimony, any agreement to advance any sum of money whatever, and no person who testified had knowledge that a single dollar of the money resulting from the sale of the mortgage went or was intended to be used for any such purpose. All of the proceeds of the mortgage, except

the $700 check to Felbel, were delivered to Sullivan, and what he did with the money no one knows.    He was not sworn as a witness, and at the time of the hearing was out of the State.

A mortgage is valid which is given to secure future advances (*Ackerman* v. *Hunsicker*, 85 N. Y. 43), and may, under certain circumstances, be good as against a junior incumbrancer, even though all of the advances have not been in fact made.    The extent to which it may be enforced, for advances made after notice of a junior incumbrance, it is not now necessary for us to decide, and we express no opinion thereon.    It is clear, however, that where the liability to make such advances is optional with the mortgagee, he will not be protected in making them after notice of the existence of the junior incumbrance.    (*Hyman* v. *Hauff*, 138 N. Y. 48.)

Assuming that the Felbel mortgage could be upheld as having been given to secure future advances to the workmen and contractors for the construction of the building, there is nothing which appears in this case, either in the mortgage or in the testimony, which establishes or tends to establish that the mortgagee was under any binding obligation to advance any money whatever, and it is perfectly clear that at the time when the transfer was made to Schiff, the appellant's mortgage was in existence, and all parties had notice thereof, not only constructive but actual, as Friedman states that he told Brown and Schiff that Wagner's mortgage had been given for work at the time of the assignment to Schiff.    It is evident, therefore, that upon the proof as it appears in this record, Wagner's mortgage was entitled to preference in payment, and the referee should have so found.    There are several erroneous rulings by the referee in excluding testimony sought to be elicited from Felbel regarding the consideration of the mortgage.    The appellant was entitled to examine the witness upon such subject to the fullest extent.    He seems to have been seriously limited in the examination upon the theory that Felbel's declarations were not admissible to impeach the mortgage in Schiff's hands.    Such rule has no application to an examination respecting a consideration for the mortgage at the time of its delivery.    As this question may not again arise, it is not necessary to discuss it further.

It follows that the order confirming the report of the referee should be reversed and a new referee be appointed to take proof,

ascertain and report in accordance with the principles laid down in this opinion who of the claimants are entitled to the surplus moneys and the respective amounts, with the costs of this appeal to the appellant.

VAN BRUNT, P. J., PATTERSON, INGRAHAM and LAUGHLIN, JJ., concurred.

Order reversed, with costs, and new referee to be appointed as directed in opinion.