In re William P. BROSNAHAN, Jr., Debtor.

Mark S. Wallach, Trustee, Plaintiff,

v.

William P. Brosnahan, III; Mary T. Brosnahan; Anne Slubowski, Defendants.

Daniel H. William, III, Plaintiff in Intervention,

v.

William P. Brosnahan, III, Mary Brosnahan Wachter; Anne Brosnahan Slubowski; Colad Broup, Inc.; Anne Laura Koessler Brosnahan; Raymond Fink, Defendants in Intervention.

Bankruptcy No. 02–14554 B.
Adversary No. 03–1066 B.

United States Bankruptcy Court,
W.D. New York.

July 20, 2004.

---

Penney, Maier, & Wallach, Mark S. Wallach, of counsel, Buffalo, NY, for Plaintiff.

Daniel H. Williams, III, Buffalo, NY, Pro Se for Plaintiff in Intervention.

Arnold Weiss, Buffalo, NY, for Defendants and All Defendants in Intervention except Raymond Fink.

Harter, Secrest & Every, William H. Helferich III, of counsel, Rochester, NY, for Raymond Fink.

CARL L. BUCKI, Bankruptcy Judge.

After passage of the Depository Institutions Deregulaton and Monetary Control Act of 1980, Pub.L. No. 96–221, 94 Stat. 132, and the Garn–St. Germain Depository Institutions Act of 1982, Pub.L. 97–320, 96 Stat. 1469, the financial services industry began dramatically to expand its use of alternative forms of mortgage financing. See Bernard M. Rifkin, *Revolving Credit: Credit Line Mortgage*, in Title Insurance 1988, at 301, 303 (PLI Real Estate Law & Practice Course, Handbook Series No. N4–4486, 1988). Among these borrowing facilities was the credit line mortgage. Conceptually, it enables a borrower to use a residential dwelling as collateral to secure periodic advances against a line of

credit. In New York, however, the use of this instrument was impeded by judicial decisions that limited the priority of discretionary future advances. To resolve these issues, New York enacted section 281 of the Real Property Law. The present dispute involves a private mortgage given under the authority of this statute. At issue is a matter of apparent first impression, namely whether section 281 mandates prior recordation as a condition for the creation of a lien to secure repayment of subsequent advances.

William P. Brosnahan, Jr., ("Brosnahan") owns with his wife a residence at 137 Livingston Parkway in Amherst, New York. On March 28, 1997, the debtor signed an instrument labeled "Revolving Note", whereby he promised "to pay, on demand", to the order of William P. Brosnahan, III, Mary T. Brosnahan and Anne Slobowski ("Payees") the lesser of NINE HUNDRED THOUSAND DOLLARS ($900,000) or the aggregate unpaid principal amount of all advances made by the Payees to the undersigned from time to time . . . ." The Payees were the debtor's three children. To secure the Revolving Note, the debtor and his wife gave to their children a mortgage on the property at 137 Livingston Parkway. Paragraph 9(a) of the mortgage acknowledges that it "is a 'credit line mortgage' for purposes of Section 281 of the Real Property Law of the State of New York." Although the mortgage was duly signed and witnessed, the parties neglected to record it in the office of the county clerk.

At the time he executed the Revolving Note, Brosnahan was defending an action by Daniel H. Williams, III, ("Williams") for money damages. In that action, Williams ultimately obtained a judgment against Brosnahan in an initial amount of $1,173,159.10. Upon its entry on April 23, 2001, this judgment encumbered Brosna-

han's interest in his residence. Having made no payment on account of the judgment, Brosnahan filed a petition for relief under chapter 7 of the Bankruptcy Code on July 26, 2002. In amended schedules, the debtor identifies Williams as his largest creditor, with more than 39 percent of outstanding unsecured debt. If one were to exclude the claims of insiders, the obligation to Williams represents more than 98 percent of the acknowledged unsecured indebtedness.

On March 19, 2003, the chapter 7 trustee commenced an action against the debtor's children, under 11 U.S.C. § 544(a) and § 550(a), to avoid the credit line mortgage and to preserve it for the benefit of the bankruptcy estate. With the permission of this court, Williams then intervened in that adversary proceeding. As an intervener, Williams answered the trustee's complaint and further filed a Complaint in Intervention, whereby Williams sought money damages and other relief against the debtor's wife and children, a related corporation, and the debtor's former counsel. Chiefly with regard to the trustee's original complaint, both the trustee and Williams then moved for various forms of summary relief.

Section 544(a) of the Bankruptcy Code provides that a trustee "may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists." In the present instance, New York Real Property Law defines the rights of a bona fide purchaser. Section 291 of that statute states the generally applicable rule: every

unrecorded conveyance "is void as against any person who subsequently purchases ... the same real property ... in good faith and for a valuable consideration, from the same vendor or assignor, his distributees or devisees, and whose conveyance ... is first duly recorded." For purposes of this section, conveyance is defined to include "every written instrument, by which any estate or interest in real property is created, transferred, mortgaged or assigned." Real Property Law § 290(3). Thus, an unrecorded mortgage is generally void as against a bona fide purchaser who has duly perfected a conveyance by means of a recording. Further, section 551 of the Bankruptcy Code provides that any transfer avoided under section 544 "is preserved for the benefit of the estate."

■ Previously, as against the Brosnahan children only, this court granted the trustee's motion for summary judgment avoiding the credit line mortgage but preserving its lien for the benefit of the bankruptcy estate. However, the court issued its order and judgment expressly without prejudice to the claims and rights of Williams. Still before this court is a motion by Williams for partial summary judgment as against the trustee, whereby Williams seeks a determination that the credit line mortgage did not create a lien upon the debtor's residence. Meanwhile, the trustee has cross moved for partial summary judgment declaring the preserved credit line mortgage to be an encumbrance superior to the judgment of Williams.

With respect to the outstanding cross motions, Williams contends that rights under a credit line mortgage are determined by Real Property Law § 281(2):

> Any credit line mortgage may, and when so expressed therein, shall secure not only the original indebtedness but also the indebtedness created by future advances thereunder made within twenty years *from the date of the recording of such credit line mortgage,* whether such advances are obligatory or are to be made at the option of the lender or otherwise, to the same extent and with the same priority of lien as if such future advances had been made *at the time such credit line mortgage was recorded* pursuant to section two hundred ninety-one of this chapter ....

(emphasis added). Williams proposes to read this statute to provide that unlike traditional mortgages, credit line mortgages secure only advances made after a recording of the mortgage instrument. Because the parties never recorded the present mortgage, Williams believes that the debtor incurred no secured indebtedness that could possibly prime the lien of Williams' judgment. In response, the trustee argues that the parties clearly intended some form of mortgage. Accordingly, the trustee would construe the instrument to create an equitable lien that the trustee may now preserve and enforce. Supporting the trustee's position, the Brosnahan children submit that the legislature did not intend for Real Property Law § 281 to expand the rights of a judgment creditor whose lien is otherwise not protected by Real Property Law § 291.

■ If the mortgage to the Brosnahan children were a traditional instrument to secure a fixed sum, Williams could not seriously challenge the trustee's position. Under New York Real Property Law § 291, an unrecorded mortgage is valid as between the mortgagor and mortgagee, but is otherwise void as against a bona fide purchaser who first records its interest. Having the perfected rights of a bona fide purchaser under 11 U.S.C. § 544(a)(3), the trustee could avoid the unrecorded mortgage. Meanwhile, section 551 of the

Bankruptcy Code preserves the avoided mortgage for the benefit of the estate. Standing in the shoes of the mortgagees, the trustee would enjoy the rights of the Brosnahan children as against a judgment creditor. Although Real Property Law § 291 allows a bona fide purchaser, whose conveyance "is first recorded", to avoid an unrecorded mortgage, the statute accords no similar protection to a judgment creditor. A judgment creditor "is not a purchaser within the recording acts," and accordingly will derive no protection from the statute as against an unrecorded mortgage. *Trenton Banking Co. v. Duncan,* 86 N.Y. 221, 227 (1881). Hence, upon his avoidance of a traditional mortgage, the trustee can assert the same priority that such a mortgagee would have enjoyed over outstanding judgments. Brosnahan, however, gave to his children not a mortgage for a fixed sum, but a credit line mortgage to secure future advances. With respect to the cross motions for partial summary judgment, the central issue is whether a different outcome will apply for credit line mortgages that are granted under the authority of Real Property Law § 281.

Real Property Law § 281(2) establishes an inclusive rather than an exclusive standard for lien perfection. Compliance with this statute is like hitting a home run in baseball. It assures a score, but there are other ways to be safe at home. The relevant text simply recites that a credit line mortgage "shall secure not only the original indebtedness but also the indebtedness created by future advances thereunder made within twenty years from the date of the recording ...." The language of this section, however, does not imply the negative. Nothing in its text establishes that advances before recordation are necessarily unsecured. Such pre-recording advances will not receive the benefit of section 281(2), but instead, their secured status will depend upon established case authority.

■ Prior to the enactment of Real Property Law § 281 in 1985, the use of credit line mortgages was impeded by the law regarding discretionary future advances. In *Hyman v. Hauff,* 138 N.Y. 48, 54, 33 N.E. 735 (1893), the New York Court of Appeals identified this problem when it acknowledged that "the lien of a mortgage, to secure voluntary future advances, will be postponed, as to such advances as are made after knowledge of the existence of a subsequent mortgage, in favor of the holder of the latter."[1] For lenders, this standard created issues regarding the relative priority of mortgages. No similar concern arises with respect to priority over judgments, however, for essentially the same reason why an unrecorded mortgage will generally prime a docketed judgment. As against a judgment, at least two courts have recognized the priority of an unrecorded mortgage to secure future advances in New York. *Thomas v. Kelsey,* 30 Barb. 268 (Sup.Ct. 1859), *In re Mosher,* 224 F. 739 (N.D.N.Y. 1915). In particular, I accept the reasoning of Justice Johnson on behalf of the court in *Thomas v. Kelsey:*

> In regard to the appeal taken by the defendants, I think the referee was clearly right in holding that the plaintiff's mortgage had priority, as a lien and claim, over the defendant's judgment. The mortgage being a valid instrument, as between the mortgagor and mortgagee, a subsequent judgment creditor has nothing to say in respect to its being recorded, or otherwise. The

---

1. For a discussion of this issue in the context of mortgages to secure variable rate obligations, see Carl L. Bucki, *Variable Rate In-* *struments in New York State,* 54 N.Y. ST. B.J. 510 (1982)

recording act relates to subsequent purchasers in good faith and for a valuable consideration, and not to judgment creditors. That a mortgage to secure future advances is valid, is well settled.... The judgment only operates as a lien upon the interest the judgment debtor has, at the time, in the premises. There is no case holding that a mortgage to secure future advances, or the liability to be incurred by future indorsements, must be recorded to protect the mortgagee against subsequent judgments.

30 Barb. at 275. For these reasons, the lack of recordation cannot negate the priority of a credit line mortgage over a docketed judgment. Even without the protection of Real Property Law § 281(2), the trustee retains the priority of his preserved interest. Accordingly, the motion of Williams for partial summary judgment is denied.

Upon the avoidance of an unrecorded mortgage, a bankruptcy trustee succeeds only to such rights as the mortgagees may have possessed. In the present instance, a determination of those rights suggests at least two issues with a potential for factual dispute. First, on a credit line mortgage, the lien extends only for the amount of funds that the lender has actually advanced. At this time, Williams disputes the amount of these advances. To the extent that the Brosnahan children advanced no funds, the judgment lien would prime any other interest of the trustee. Second, the trustee's rights may be subject to the same defenses that Williams could have asserted against the original mortgagees. For example, in *Thomas v. Kelsey,* the court observed that if a mortgagee has "so dealt with his mortgage as to mislead and defraud [judgment creditors], equity would doubtless give a preference to their judgment over the mortgage." 30 Barb. at 275. At this time,

the court reaches no decision on the applicability of this defense. If allowed, however, such an attack would involve factual allegations that Williams has had no opportunity to prove. Due to the unresolved factual issues, the court is unable to grant any further relief to the trustee at this time.

For all of the reasons stated herein, this court will deny the motions of both Williams and the trustee for partial summary judgment.

So ordered.